UDELL, BY NEXT FRIEND, *v.* THE CITIZENS STREET
RAILROAD COMPANY.

[No. 18,164.  Filed Feb. 15, 1899.  Rehearing denied April 28, 1899.]

APPEAL AND ERROR.—*Special Verdict.*—*Practice.*—Available error cannot be predicated as to the ruling of the court upon plaintiff's objection to defendant's request for a special verdict, where the objection was only to "the filing of the defendant's request for a special verdict," and no demand was made by plaintiff for a general verdict, either before the introduction of evidence, or afterwards, and no objection was made to the special verdict after the return thereof, and no motion was made for a *venire de novo*.  *pp.* *509, 510.*

STREET RAILWAYS.—*Injuries to Trespasser.*—Plaintiff, a boy eight and one-half years of age, being unable to get into an open electric street car on account of the crowded condition thereof, stood on the side of the car not intended for passengers, and on which strips were placed to prevent the ingress or egress of passengers, with his feet on the boxing of the axle, and held on to a portion of a seat with his hands.  He rode in a stooped position three-fourths of a mile, when, being unable to retain his hold, he fell and was run over by the wheels of the car, and injured.  None of the employes of the train saw the boy hanging on the car when it was in the act of starting nor while under way, but might have seen him, if they had made an examination of that part of the car.  Plaintiff did not pay his fare, but intended to do so when called upon.  *Held*, that plaintiff was not a passenger upon defendant's cars, to whom it owed the duty of safe carriage and immunity from injury. *pp. 510-513.*

SAME.—*Injuries to Trespassers.*—*Infants.*—*Special Verdict.*—Where the special verdict in an action against a street railway company for personal injuries shows that plaintiff was wrongfully upon the car at the time of the injury, the fact that he was only eight and one-half years of age did not make him any less a trespasser. *p.513.*

Udell *v.* Citizens Street R. Co.

STATUTES.—*Title.—Constitutional Law.—Special Verdict Law.*—The act of March 11, 1895, amending the practice act, and providing for special verdicts, entitled "An act to amend section 389 of an act concerning proceedings in civil cases, approved April 7, 1881, and designated as section 546 of the Revised Statutes of 1881," sufficiently expresses the subject in the title. *pp. 514, 515.*.

SPECIAL VERDICT.—*Constitutional Law.—Right of Trial by Jury.*—. The act of March 11, 1895, amending the practice act, and providing for special verdicts, is not unconstitutional, as violating the right of trial by jury. *p. 515.*

INTERROGATORIES TO JURY.—*Practice.*—No error was committed in refusing to submit certain interrogatories to the jury prepared and tendered by counsel, where the interrogatories submitted covered every material question of fact in the case. *p. 516.*

INSTRUCTIONS.—*Special Verdict.*—Where a special verdict is requested no instructions are proper, except such as are necessary to inform the jury as to the issues made by the pleadings, the rules for weighing and reconciling the testimony, and who has the burden of proof as to the facts to be found, with whatever else may be necessary to enable the jury clearly to understand their duties concerning such special verdict and the facts to be found therein. *pp. 516, 517.*

From the Marion Superior Court. *Affirmed.*

*William V. Rooker,* for appellant.

*W. H. H. Miller* and *John B. Elam,* for appellee.

DOWLING, J.—Action for damages for a personal injury sustained by the infant appellant. There were two trials of the cause in the Marion Superior Court, the first resulting in a disagreement of the jury. On the second trial, upon the request of appellee in writing, made before the introduction of any evidence, the court, agreeably to the requirements of the act of 1895, directed the jury to return a special verdict. Such special verdict was prepared by counsel on either side of the cause, was submitted to the court for revision, and was in the form of interrogatories properly framed. The court gave to the jury only such general instructions concerning their duties as are suitable where a special verdict is requested, and refused to give certain special instructions tendered on behalf of appellant.

On the return of the special verdict, appellant moved for judgment in his favor upon it, which motion was overruled. He also filed a motion for a new trial, and the court overruled it.    Judgment was thereupon rendered for appellee on its motion.    Exceptions to these rulings were saved by appellant.

The errors discussed by appellant's counsel in their briefs, and orally, are the ruling of the court on appellant's objection to appellee's request for a special verdict; the rulings on the motions for judgment on the special verdict; and the decision of the court on the motion for a new trial.

The first of these errors is not available to appellant for the reason that no question touching the same is properly presented for the determination of the court.    The appellee having filed its request for a special verdict, appellant filed his objection to it in these words, (title omitted): "The plaintiff objects to the filing of the defendant's request for a special verdict herein, for the reason that the same is filed pursuant to the act of March 11, 1895, concerning proceedings in civil cases, which act is unconstitutional and void, for the reason that it deprives the plaintiff of the right of trial by jury upon the issues as joined in the complaint and answer, and requires the jury to take from the court, and not from the pleadings, the questions to be decided by the jury."

It will be observed that the objection was only to "the filing of the defendant's request for a special verdict." No demand was made, either before the introduction of the evidence, or afterwards, that the jury be directed to bring in a general verdict.    On the return of the special verdict no objection was made to it by appellant, nor was there at that time a request that the jury be sent back with instructions to make a general verdict.    No motion was made for a venire de novo.    If counsel for appellant thought they were entitled to a general verdict, they should have asked for it at the right time, and in the proper manner.    If they thought the verdict returned by the jury was not the proper one, or

that it was imperfect, they should have asked the court to set it aside, and award a *venire de novo*. *Bosseker* v. *Cramer*, 18 Ind. 44; Tidd's Prac. 922; *Smith* v. *Jeffreys*, 25 Ind. 376; Elliott's Gen. Prac., section 935, and cases cited. The question as to the validity of the special verdict, however, is properly presented under the motion for a new trial and is considered in another part of this opinion. Did the court err in overruling appellant's motion for judgment on the special verdict, and in rendering judgment thereon in favor of appellee?

The special verdict shows that appellant, at the time of the accident, was a boy aged about eight years and seven months, of average size, strength, and intelligence, residing with his parents on Udell street in the city of Indianapolis, three-fourths of one mile from the public resort known as Armstrong Park. The appellee was the owner of, and was operating an electric railroad for the transportation of passengers, in the city of Indianapolis, and in North Indianapolis, in Marion county, Indiana. On June 26, 1892, appellee stopped the train, consisting of a motor car and a trailer, both being open or summer cars with tops supported by posts, at Armstrong Park, for the purpose of receiving passengers. A long step, or foot-board, ran along these cars on the right-hand side (when looking toward the front end), by means of which passengers entered upon the platform or floors of said cars. The cars were provided with seats running across from side to side, upon each of which five persons could be seated. On the left-hand side of the cars there was no step, or other means of entrance, and wooden strips or slats extended from end to end on such left-hand side to prevent the ingress or egress of passengers. These slats were so adjusted that they could be raised or lowered to admit or discharge passengers on that side of the car. No passengers were received by appellee on the left-hand side of its cars at the park on the day mentioned, nor did appellee invite passengers to enter its cars on that side. Appellant, who was at Armstrong Park, got

upon the forward part of the trailer car, on the left-hand side thereof, placing his feet on the boxing of the axle, and holding on to a portion of a seat with his hands. He neither paid any fare, nor offered to do so, nor was he asked for his fare by any employe of appellee. He had a nickel in his pocket with which he could have paid such fare, and he intended to do so, if asked for it. He rode in the place described, in a stooping position, on the outside of the car, for about three-fourths of a mile, and until he arrived at Udell street, where he intended to get off. Here he was unable to retain his hold and fell off, and was run over by the wheels of the trailer. The right leg, and the toes of the left foot, were so crushed as to require amputation. After the train started, appellant exercised reasonable care, under the circumstances, to avoid being hurt. He could not have gotten off with safety from the time the train started until he fell, nor could he draw himself into the car, or release his hold, for the purpose of stopping it. The cars ran through from Armstrong Park to Udell street without stop. None of the employes of appellee saw the appellant when the train was in the act of starting, or while he was hanging on the outside of the trailer after the train was under way, although they might have seen him if they had made an examination of that side of the car. No such examination was made. The place where appellant was riding was not a proper one, and was very dangerous. The car on which appellant rode was crowded with passengers, many of whom stood on the foot-board or step, and on the floors of the cars. The position of some of these was such as to render it difficult for the employes of the appellee to see appellant. Some of these passengers were near to appellant, while he was hanging on the outside of the car, and, if he had wished to do so, he could have touched them, or spoken to them, thereby making them aware of his presence, or asking them to stop the car. He did neither. When appellant came to the car at the park, there was no room for him to get upon it as a passenger. A bystander told appellant to go

around to the left-hand side of the car and get on, and he acted on this suggestion. When the car left the park, the seats, the aisles between the seats, the platforms, and the foot or running boards, were full of passengers. Before the day of the accident, appellant had been warned against hanging on the outside of street cars, and riding there. He did not know that he had no right to do so, or that it was a dangerous place to ride. In the usual way of collecting fares upon the car on which appellant was riding, the conductor could have seen appellant, and appellant knew this. Appellant intended to pay his fare when called upon. When the passengers were entering the car at Armstrong Park, the conductor and motorman were temporarily absent from it, and took no part in assisting passengers to get on, or in seating them. When appellant got upon the boxing of the axle at Armstrong Park he did not comprehend the danger of his position, but afterwards became aware of it. While appellant was standing upon the boxing of the axle, and hanging on the side of the car, the train was run at the rate of eighteen or twenty miles per hour. Appellant first attempted to get on appellee's cars as a passenger, from the platform at the east entrance of Armstrong Park, but was unable to do so on account of the crowd of persons on the cars. Appellee's servants in charge of the train could have stopped it after leaving Armstrong Park, and before reaching Udell street, if they had been asked to do so.

Upon a careful review of these facts, giving to the conduct of the appellant the most favorable construction, we do not think that they sustain the proposition that appellant was a passenger upon the appellee's cars, to whom appellee owed the duty of safe carriage and immunity from injury. Appellant was not in a place intended for passengers. He was not received as a passenger. His presence on the car was not made known to appellee's agents and servants. He did not conduct himself as a passenger. Appellee's servants were not required to search for trespassers before starting the cars, and

appellee was not bound to discover appellant and remove him from the perilous situation in which he had voluntarily placed himself. The distressing consequences of the act of appellant, in standing on the outside of the car on the iron boxing of the axle, cannot be said to be the result of any act or omission of appellee or its employes. The circumstance that appellant had a nickel in his pocket with which to pay his fare—when called upon—did not make him a passenger. If he did not intend to pay his fare unless called upon, and left the car, or attempted to leave it without paying such fare, that fact of itself would be entitled to weight in determining the question of his right on the car. It is shown by the special verdict that, although the train was run at a high rate of speed from Armstrong Park to Udell street, appellant was able to maintain his hold, and did not fall off until he arrived at, or very near, his destination, and that the rate of speed of the cars when approaching Udell street was generally reduced. As the special verdict fails to show that appellant was a passenger, the rules concerning the overloading of street cars, and the duty of street car companies to passengers, stated in *Pray v. Omaha St. R. Co.*, 44 Neb. 167, 48 Am. St. 717, and the cases there cited, do not apply. The fact that appellant was a child, aged eight years and seven months, did not make him any less a trespasser, if the other facts found compel the conclusion that he was wrongfully upon the car. If, after an ineffectual attempt to get on the car at a proper and usual place, he abandoned that intention and became a trespasser, he lost the right to that measure of care and protection which a carrier of passengers is required to extend to one who seeks to be carried as a passenger.

The theory of both paragraphs of the complaint is that appellant was a passenger on appellee's car. The special finding does not sustain this theory. On the contrary, the only conclusion which can be drawn from the facts found is that appellant was wrongfully upon the car, in an improper,

unusual, and dangerous place; that he was not known to be there by appellee's employes in charge of the train; and that the consequent injury was due to his voluntary exposure of himself to evident peril.

We find no error, therefore, in the action of the court in overruling appellant's motion for judgment on the special verdict, and in rendering judgment for appellee.

The constitutionality of the act of March 11, 1895, amending the practice act, and providing for special verdicts, is called in question, and a decision upon it is involved in the refusal of the trial court to give the special instructions tendered by appellant.

Two points are made in support of this objection; *first*, that the subject of the act is not expressed in the title; and *second*, that the act violates the right of trial by jury.

The title is as follows, "An act to amend section 389 of an act concerning proceedings in civil cases, approved April 7, 1881, and designated as section 546 of the Revised Statutes of 1881."

The act so amended is entitled, "An act concerning proceedings in civil cases."

That the title of the act of March 11, 1895, sufficiently complies with the requirement of the Constitution has been frequently decided by the courts of this State. Like decisions have been made by the courts of Louisiana, from the constitution of which state, this provision is said to have been borrowed. *Greencastle, etc., Co.* v. *State, ex rel.*, 28 Ind. 382; *Walker* v. *Caldwell*, 4 La. Ann. 297; *Duverge* v. *Salter*, 5 La. Ann. 94; *Blakemore* v. *Dolan*, 50 Ind. 194.

It is said in *Greencastle, etc.*, v. *State, ex rel.*, *supra*, that, —"Since the decision in *Walker* v. *Caldwell*, *supra*, the legislature of Louisiana, with a few exceptions, has adopted the following formula: "Be it enacted, etc., that section— of an act entitled etc., be amended and reënacted so as to read as follows:"

A formula substantially like this was adopted by the General Assembly of the State of Indiana, at least as early as March 2, 1853, and the same has been used by every legislature in this State since that date. There is nothing in the first point.

Does the act of March 11, 1895, violate the right of trial by jury? In our opinion, it does not. Except as to their form, the act of March 11, 1895, did not change the law governing special verdicts as it had existed in this State since 1852. The civil code of 1852 required the court, at the request of either party, to direct the jury to give a special verdict in writing upon all, or any, of the issues; and in all cases, when requested by either party to instruct them, if they rendered a general verdict, to find specially upon particular questions of fact to be stated in writing. 2 R. S. 1852, section 336, p. 114.

This provision continued in force until the enactment of March 11, 1895. Its validity was not questioned. Acquiescence in the constitutionality of this statute for so long a period by the courts of this State is a circumstance of some weight in determining the question of the validity of a similar statute.

Independently of this consideration, however, we are unable to perceive that the statute under examination in any way invades the province of the jury, or deprives the citizens of this State of any common law right connected with a trial by jury to which, under the Constitution, they are entitled.

In civil actions, under the Constitution of this State, the jury never possessed the right to decide questions of law. Their inquiries have always been confined to matters of fact. The scope of such inquiries is not abridged by the act of March 11, 1895. The argument of counsel, founded upon the distinction between primary facts and inferences or conclusions from facts, is unsound. If an inference or conclusion from a fact, or facts, is itself a fact proper to be found by the jury, it may be made the subject of an interrogatory.

But if the proposed inference or conclusion from a fact or facts is not itself a fact, but a conclusion or inference of law, then the jury has no right to find such conclusion or inference. The statute in question authorized either party to submit to the jury every essential question of fact, together with every proper inference or conclusion of fact. If parties to actions did not avail themselves of this privilege, it was not because of any defect or prohibition in the law.

We have examined *Railroad Company* v. *Stout,* 17 Wall. 657; *Patterson* v. *Wallace,* 1 Mc. Q., H. L. Cas. 748; *Mangam* v. *Brooklyn, etc., R. Co.,* 38 N. Y. 455; *Detroit, etc., R. Co.* v. *VanSteinburg,* 17 Mich. 99; *Cleveland, etc., R. Co.* v. *Harrington,* 131 Ind. 426; *Baltimore, etc., R. Co.* v. *Walborn,* 127 Ind. 142; *Mann* v. *Belt R. Co.,* 128 Ind. 138; *Cincinnati, etc., R. Co.* v. *Grames,* 136 Ind. 39, cited by counsel for appellant, and find nothing in them inconsistent with the views expressed in this opinion.

If the jury is required to find any conclusion of law in answer to an interrogatory, such finding must be disregarded. *Louisville, etc., R. Co.* v. *Miller,* 141 Ind. 533, 544; *Roller* v. *Kling,* 150 Ind. 159; *Weaver* v. *Apple,* 147 Ind. 304.

Appellant complains of the refusal of the trial court to submit to the jury certain interrogatories prepared and tendered on his behalf. The act regulating special verdicts expressly authorized the court to change and modify the interrogatories prepared by counsel. One hundred and forty-four interrogatories were submitted to, and answered by, the jury. They covered every material question of fact in the case. Many of those tendered by appellant's counsel called for mere opinions, for conclusions of law, and for facts which were evidentiary, and the court did right in excluding them.

It is further objected that the court erred in refusing to give special instructions numbered from one to six, tendered by appellant's counsel. It is sufficient to say that where a special verdict is requested no instructions are proper, except

such as are necessary to inform the jury as to the issues made by the pleadings, the rules for weighing and reconciling the testimony, who has the burden of proof as to the facts to be found, with whatever else may be necessary to enable the jury clearly to understand their duties concerning such special verdict, and the facts to be found therein. *Roller* v. *Kling*, 150 Ind. 159.

The court gave to the jury all instructions necessary to enable them to understand their duties concerning the special verdict, and the facts to be found therein. It was neither necessary nor proper for it to give general instructions as to the law of the case. *Roller* v. *Kling, supra*, and cases cited.

The motion for a new trial was properly overruled. Finding no error in the record, the judgment is affirmed.