## JORDAN v. GRAND RAPIDS & INDIANA RAILWAY COMPANY.

[No. 20,232. Filed April 8, 1904.]

RAILROADS.—*Trespassers.*—A boy eight years of age, who climbed upon a box-car, without invitation, to watch a sale of wild horses in an adjoining lot, was a trespasser. *p. 468.*

SAME.—*Trespassers.*—The law does not require a railroad company to search for trespassers on its cars standing upon side-tracks before moving the cars. *pp. 468, 469.*

SAME.—*Injury to Trespasser.*—A railroad company is not liable for an injury to a trespasser unless it appears that it had knowledge of the situation of the trespasser in time to have prevented the injury, or that the injury was purposely or recklessly inflicted. *p. 469.*

DEATH BY WRONGFUL ACT.—*Evidence.*—Where in an action for the death of a child it appeared that death was almost instantaneous, and was

caused by his fall from the top of a box-car, under the wheels of a moving train, a particular description of the various injuries was not material, and evidence of such injuries was properly excluded. *p. 470.*

RAILROADS.—*Injury to Trespasser.*—In an action against a railroad company for the death of a boy caused by falling off a car on which he was standing watching a horse sale in an adjoining lot, evidence of a sale of horses at the same place on a former occasion which had the effect of attracting men and boys to that vicinity was properly refused, as it did not prove that defendant invited or expected trespassers upon its property, or that it must have anticipated that the movement of cars on its tracks could not be carried on without special warning to persons who might congregate about the tracks. *pp. 470, 471.*

DEATH BY WRONGFUL ACT.—*Parent and Child.—Action for Death of Child.—Occupation and Financial Condition of Plaintiff.—Evidence.—Harmless Error.*—Where the facts proved did not make defendant liable in an action by a parent for the death of his child, the refusal of the court to admit evidence of the occupation of plaintiff, and the value of his property, was harmless. *p. 471.*

From Jay Circuit Court; *J. M. Smith*, Judge.

Action by John Jordan against the Grand Rapids & Indiana Railway Company. From a judgment for defendant, plaintiff appeals. Transferred from Appellate Court, under §1337u Burns 1901. *Affirmed.*

*E. E. McGriff* and *G. W. Bergman*, for appellant.
*Allen Zollars* and *F. E. Zollars*, for appellee.

DOWLING, J.—The complaint in this case was in two paragraphs, the first averring that the appellee wilfully, purposely, and intentionally inflicted fatal injuries upon the infant son of the appellant, by suddenly attaching a locomotive to two cars standing on a siding, on one of which appellant's son, a child eight years of age, with the knowledge of the appellee, its agents, and employes, was sitting or standing, and, without warning, putting the same in motion, thereby causing the child to leap or fall in an attempt to escape therefrom; and the second alleging that the child was killed by the negligence of the appellee, its agents, and employes, in so attaching the locomotive and suddenly starting the cars without warning the child,

or giving him an opportunity to escape from the car. The cause was tried by a jury, and, at the conclusion of the evidence for the plaintiff, the court gave a peremptory instruction for a verdict for the defendant, which was thereupon returned. Over a motion for a new trial, judgment was rendered for the defendant.

The error assigned is the ruling upon the motion for a new trial. The alleged insufficiency of the evidence to sustain the verdict, the exclusion of certain evidence offered by the appellant, and the giving of the peremptory instruction were the reasons for which a new trial was demanded.

The facts material to a decision of the questions before us are these: On the day of the accident, the appellee owned, and for some time before that had operated, on its own land, a main railroad track, two side-tracks, one of which was on the east side of the main track, and the other on the west side, all lying near together, and also a spur-track running from the southwest end of the east side-track, in a southwesterly direction, to the property of the Haynes Milling Company. Appellee also owned certain lots enclosed by high board fences, adjacent to its main track and side-tracks, and about five feet from the east track, used as stock-yards, in which horses and other domestic animals were temporarily kept for shipment, delivery, or sale. On September 2, 1901, the day of the accident, after advertisement by posting, a public sale of wild horses from the West took place at these stock-yards, and the lassoing, capture, and management of the animals attracted some seventy-five or more persons, who stood or sat on cars on appellee's tracks, watching the men and horses. Among these spectators were several young boys. These persons could have been seen by the employes of the appellee while they were switching cars. Appellant's son, a boy eight years old, small in size, but of ordinary intelligence, strength, and activity, was among them. With some fifteen or twenty other men and boys, to obtain a better

view of the yards, he climbed to the top of an empty box-car standing on the side-track near the sheds in the stock-yards and overlooking them, and sat down on the roof of the car. The car was not attached to a locomotive, but, with two or three other cars, had been in the same place for several days. While these cars were so standing on the side-track, persons in charge of a locomotive engaged in switching cars at this point, and probably in the employment of the appellee, caused the said engine to be run along and over the said main track, and near the place where the said sale was in progress, in full view of said place and of the persons on and about the cars who were watching the men and animals in the stock-yards. Shortly afterwards, during the same morning, the persons in charge of the said locomotive ran it upon the said east side-track, and coupled it to the empty box-cars on which the said men and boys, including appellant's son, were standing or sitting, without any previous notice of their intention to do so. When the engine approached the cars, some one shouted to the persons on the cars that the locomotive was coming, and that they had better get off. The engine was in full view of the men and boys on the cars, and was making considerable noise puffing steam and running over switches. When the coupling took place, the men and boys ran northward on the cars, and tried to get off. Some of them jumped on the stock sheds, a few children were taken off by their parents, and others climbed down. Appellant's son, who was on the third car from the engine, and another boy on the second car, were unable to get off, because of the number of persons who were jumping and climbing off. The former rose and stood on the top of the car some four or five feet from its north end, and acted as if he intended to climb down, but fell off between the cars, and was run over and killed. The train was moving slowly, and he fell at the moment when the engine was stopped, and the cars "jarred back." He was shaken off.

The other lad descended the car ladder and reached the ground in safety. While the switching was going on, the conductor of the switching train was on the ground, and stood for several minutes near the corner of the stock sheds, watching the men and horses in the yards. He uncoupled one of the cars while the engine and its crew were switching on those tracks.

Counsel for appellant insist upon two main propositions: (1) That it appears from the evidence that the acts of the employes of the appellee which caused the death of appellant's son were done under such circumstances as evinced a reckless disregard for the safety of the child, and a willingness to inflict the injury, and therefore that the injury was a wilful and an intentional one, for which the appellant was entitled to recover, even if the child was a trespasser on appellee's cars, and was guilty of contributory negligence; and (2) that the injury to and killing of the child were caused by the negligence of appellee's employes in failing to warn the child of his danger when the engine was coupled to the standing cars, and to give him time to escape, the boy being of tender years and incapable of contributory fault.

It is manifest that the boy, although an infant in years, was a trespasser. *Udell* v. *Citizens. St. R. Co.,* 152 Ind. 507, 71 Am. St. 336. It cannot be said that he was upon the top of the empty box-car by the invitation or permission of the railroad company. There was no proof that the appellee gave any invitation or license, express or implied, to anyone to get upon its cars for the purpose of looking over the fences and watching the men and animals in the stock-yards. The sales took place inside the yards, and the persons attending them for the purpose of examining the horses or purchasing them were not outside the yards, nor on the tops of the cars. The men and boys on the cars were merely idle spectators, gathered by chance, and sustaining no relation to the rail-

road company except that of trespassers upon its property. It was not proved that the employes of the appellee knew or had reason to believe that any person remained on the cars after the coupling to the locomotive took place. The law did not require them to search the cars for trespassers before moving them. *Udell* v. *Citizens St. R. Co.*, *supra*. The appellee, by its switching crew, was engaged in its proper and necessary business, which required that cars should be moved from point to point on its tracks with greater or less celerity. The lives of scores of travelers might have been jeoparded by delay in getting cars off sidings, and in failing to clear the main track of freight or other trains or cars, and rapidity in the performance of such work did not constitute negligence. The circumstances were not such as to authorize the inference that the trainmen must have seen and known that the child was in a situation of peril. All the cases hold that in order to render a defendant liable for an injury to a mere trespasser he must have had knowledge of the situation of the trespasser in time to have prevented the injury, or that the injury was purposely or recklessly inflicted. *Louisville, etc., R. Co.* v. *Bryan,* 107 Ind. 51; *Indianapolis, etc., R. Co.* v. *Pitzer,* 109 Ind. 179, 58 Am. Rep. 387; *Krenzer* v. *Pittsburgh, etc., R. Co.,* 151 Ind. 587, 68 Am. St. 252; *Palmer* v. *Chicago, etc., R. Co.,* 112 Ind. 250, and cases cited.

The engine was in plain view of all the persons on the cars as it approached, and it was making a noise by puffing steam and by running over switches. Before it reached the cars near the stock-yards, the men and boys on the cars were warned by a volunteer that it was coming, and were admonished to get off the cars. All did so except David Ray Jordan and Glen Kinsey, two small boys. After the coupling was made, the train moved off slowly, and one of the boys climbed down the car ladder in safety. Appellant's son was about to do the same thing when the sud-

den stopping of the train caused him to fall off. The evidence does not show that the engineer and the other persons in charge of the train evinced any disregard for the safety of the child, either in making the coupling or in moving or stopping the train. The child was sitting on the top of the third car back from the engine. The duty of the engineer and fireman required them to look forward along the track. *Pittsburgh, etc., R. Co.* v. *Fraze,* 150 Ind. 576, 65 Am. St. 377. It does not appear that they could have seen the boy if they had looked back over the train. The evidence fell far short of proving an intentional injury, or of establishing the fact of such a reckless disregard of the safety of the child as amounted to a willingness to injure him. *Palmer* v. *Chicago, etc., R. Co., supra; Louisville, etc., R. Co.* v. *Bryan, supra;* Cooley, Torts, 674; *Terre Haute, etc., R. Co.* v. *Graham,* 95 Ind. 286, 48 Am. Rep. 719.

It is equally clear, for the reasons already given, that the appellee was not guilty of actionable negligence in failing to warn the child that the locomotive was about to be attached and the cars moved. The evidence was insufficient to charge the appellee with knowledge, express or implied, of the presence of the child on the car and in a place of danger. If the boy had been seen by the engineer or train crew on the top of the car before the train started, or while it was running, a different question would have been presented. But in the absence of proof that they did see him, or that they ought to have looked, and could have discovered him if they had done so, the appellee could not be held responsible for the accident.

2. The death of the child was almost instantaneous, and was caused by his fall from the top of the box-car under the wheels of a moving train. A particular description of the various injuries he received was not material, and the evidence of these injuries was properly excluded.

3. The court did not err in refusing to admit evidence

of a sale of horses at the appelle's stock-yards on a former occasion which had the effect of attracting boys and men to that vicinity. Such evidence did not prove that the appellee invited or expected trespassers on its property, nor did a single occurrence of this character require the appellee to anticipate that its cars would be occupied by sightseers, and that its ordinary business of moving its cars and trains on its tracks in that vicinity could not be carried on without special warnings to persons who might congregate outside of the stock-yards.

4. As the facts proved did not make the appellee liable for the death of appellant's son, the refusal of the court to admit evidence of the occupation of the appellant and the value of his property, even if erroneous, was harmless.

Giving· to the evidence for the appellant its full legal effect, and allowing every reasonable inference from the facts proved, we are of the opinion that it failed to establish the allegations of either paragraph of the complaint, and that it would not have supported a verdict in his favor. Had such a verdict been returned, it would have been the duty of the court to have sustained a motion by the appellee for a new trial on the ground of the insufficiency of the evidence. In view of the failure of the proof to support the complaint, the direction of the court to the jury to return a verdict for the defendant was necessary and proper.

Judgment affirmed.