Harry Cunningham, Appellee, v. Illinois Central Railroad Company et al., Appellants.

1. NEW TRIAL—*newly-discovered evidence.* A motion for new trial on the ground of newly-discovered evidence is properly denied where the evidence is merely cumulative and furnishes no additional light on the questions at issue.

2. RAILROADS—*use of other crossings in the locality of the accident.* In a personal injury action where plaintiff, crossing the tracks at a private crossing, is injured by defendant's engine, testimony as to the use made of such crossings in that locality is admissible to show acquiescence of the company.

3. RAILROADS—*question of fact.* Where plaintiff is injured while crossing defendant's tracks, the nature of the crossing is a question to be determined by the jury from all the facts and circumstances in evidence.

4. RAILROADS—*care toward licensee.* In a personal injury action, an instruction that, if "plaintiff was on the railroad right of way where he was injured, simply by the acquiescence of the railroad company, he was a mere licensee and the defendants would owe him no other" or greater duty as to his safety than if he were a trespasser" is properly refused where deceased was struck while on a crossing.

5. RAILROADS—*duty of care to persons walking along tracks.* A railroad owes no duty to a person walking along its tracks without its invitation, either express or implied, except to refrain from wantonly or wilfully injuring him and to use reasonable care to avoid injury to him after he is discovered in peril; and it makes no difference in that respect whether he is a trespasser, a mere licensee, or one who is on the tracks by mere sufferance without objection by the company.

6. RAILROADS—*duty to persons crossing tracks.* Where plaintiff is injured while crossing defendant's tracks, his right to be there and the duty owed him by the railroad company depend in a large degree upon the circumstances surrounding the maintenance of the crossing at that point by the company.

7. INSTRUCTIONS—*as to preponderance of evidence.* In a personal injury action an instruction that the jury should take into consideration the number of witnesses testifying on any particular point or issue in the case, and if they found a greater number had testified to certain facts on behalf of one party than had testified to the contrary on behalf of the other party, and they believed the credibility of the greater number equal to that of the lesser number, then they should find the preponderance of the evidence upon the side of the greater number, is properly refused, since it ignores the probative force of circumstances appearing in evidence apart from the testimony of witnesses.

8. DAMAGES—*when not excessive.* A judgment for $8,000 for injuries to plaintiff, a boy of eight years old, resulting in the loss of a foot is not so excessive as to call for a reversal.

Appeal from the Circuit Court of Madison county; the Hon. WILLIAM E. HADLEY, Judge, presiding. Heard in this court at the October term, 1912. Affirmed. Opinion filed March 10, 1913.

WEBB & WEBB, for appellee.

BURROUGHS & RYDER and C. E. POPE, for appellants; CHARLES A. SCHMETTAU, of counsel.

MR. JUSTICE HIGBEE delivered the opinion of the court.

On September 30, 1906, appellee, Harry Cunningham, who was then eight years of age, suffered the loss of his right foot, which was run over and cut off by one of the front wheels of a locomotive engine belonging to the Toledo, St. Louis & Western Railroad Company, while said engine, attached to a passenger train was running over the track of the Illinois Central Railroad Company, near a coal washer located about a quarter of a mile east of the village of Glen Carbon in Madison county, Illinois. He brought suit, by Joseph Flannery his next friend, to the March Term, 1910, of

the Circuit Court of said county against both of said railroad companies to recover damages for his injuries.

The first trial does not appear to have proceeded to a verdict but subsequently there was another trial, which resulted in a judgment in favor of appellee for $10,548 against both defendants, from which an appeal was taken by them to this court. At the October Term, 1911, this court reversed the judgment and remanded the cause. Thereafter another trial was had, resulting in a verdict for appellee for $8,000, and a judgment for a like amount. The defendants below have again brought the cause to this court for review, insisting that the last judgment should be reversed for the reason that the verdict is contrary to the law and the evidence and the court committed errors in the trial of the cause. No change appears to have been made in the declaration at the last trial of the cause, the purport of which and the statement of the case, are so clearly set forth in the former opinion of this court, that it is unnecessary to repeat the same here. At the close of all the evidence on the last trial, appellants each requested the court to peremptorily instruct the jury to find it not guilty and they claim that under the evidence produced, these instructions should have been given, assigning as reasons therefor, that the evidence showed appellee was not on the crossing when he was injured, that in any event he was a trespasser, that he was not using the crossing for highway purposes, that he was not exercising care for his own safety and that neither railroad company was negligent. The crossing upon which appellee claims to have been at the time he was struck by the engine, was not a public highway, but had been constructed some six months prior to the time appellee was injured, by the Illinois Central Railroad Company, one of the appellants, near a coal washer of the Madison coal corporation. Planks had been placed between the rails of the tracks and approaches built from a street in Glen Carbon, run-

508 APPELLATE COURTS OF ILLINOIS.

Cunningham v. Illinois Cent. R. Co., 179 Ill. App. 505.

ning parallel with and near to the railroad tracks. The crossing appears from the evidence, to have been used with the knowledge and consent of the railroad company, by the public generally in passing between the main part of the village on the north of the tracks and the coal washer and dwelling houses located near there on the south side of the tracks.

The claim of appellant that appellee was a trespasser, even if he was on the crossing at the time he was struck, involving as it does, the right of the public generally to use the crossing by invitation or otherwise, was fully considered when the case was here before and decided adversely to the contention of appellants. Whether appellee had a right to the use of the crossing, was mixed question of fact and law and we find nothing arising from the last trial, which leads us to change our views, as announced in our former opinion, that there was no error in refusing to direct a verdict on the ground appellee, if on the crossing, was a mere trespasser or licensee.

One of the main questions of fact, if not the principal one, is that which concerns the location of appellee at the time he was struck. He asserts that he was on the crossing at the time, while appellants contend that he was injured some 24 feet east of the east end of the planking on the crossing, and it is upon this question that there is the greatest conflict in the evidence and to its discussion the greater portion of the arguments of the respective parties are devoted. When the case was here before we arrived at the conclusion and so stated "that by the greater weight of the evidence appellee was not on the crossing when injured." Upon the last trial in the Circuit Court, the same witnesses testified in behalf of appellee upon this question as at the preceding trial, while two additional ones testified in relation to the facts bearing upon the same question for appellant.

Appellee and his brother Willie, who was with him at the time and was then six years old, stated that he was on the crossing at the time he was struck. His mother who says she was watching from the front porch of their home, a short distance away, stated that she went out to see if the boys were going to be home for supper; that appellee was 15 or 20 feet from the crossing when she first saw him; that she stood there until she saw he was alright on the crossing and was not going to venture across the tracks; that while she stood there Harry was standing waiting for the train to pass; that he had just got to the crossing when the freight train got even with the crossing and she could see him between the cars as they passed. The freight train referred to was the train going east on the north or main track while the passenger train, which injured appellee, was going west on the south or passing track.

Opposite to this testimony was that of a number of employes of the two defendants, consisting of the conductor and two brakemen on the freight train and the engineer, fireman, baggageman, brakeman and conductor of the passenger train, all of whom testified either that the boys were north of the crossing at the time of the injury or stated circumstances tending to show that such was their location. There were no other witnesses to the occurrence. Of all these witnesses the two boys, were in the best position to determine where appellee was at the time he was injured. They must have positively known where he was at the time and the solution of this question depends largely on whether their evidence is worthy of belief. The crossing appears to have been only of ordinary width to conveniently accommodate vehicles passing over, and, if we may judge from photographs introduced in evidence, was not easy to be distinguished at any distance from its surroundings. As a circumstance bearing upon the question of the location of appellee at the time of his injury, appellant introduced evidence tending to show the existence of blood stains either on or near

the south rail of the passing track at distances variously estimated at from 20 to 30 feet east of the crossing and that there was no evidence of blood upon the crossing. To meet this testimony, appellee introduced evidence tending to show that blood was discovered upon the crossing immediately after the injury. Two witnesses, appellee's step-father, Flannery, and William Jacobs testified for appellee that they saw blood upon the crossing soon after appellee was injured. Appellee testified that after he was injured, he crawled to a little scale house which appears to have been located about 40 feet southeast of the crossing; that from there he was carried by the conductor to one of the coaches and placed on a stool on the platform; that he was afterwards taken off of the platform on the north side and carried home. Both Flannery and Jacobs swore to tracing blood from the crossing to the scale house and from thence to the track. Appellee's brother, Willie, swore that Harry was on the crossing about in the middle where the horses walked, on the sidewalk, when he was struck and that he crawled from there to the scale house on his hands and knees; that the conductor picked him up at the scale house and put him on the platform of the coach and that he was afterwards taken off of the north side of the coach. Some six witnesses on behalf of appellant testified to having seen blood or blood spots or what was pointed out to them as such, at a distance of from 20 to 30 feet north of the crossing, a majority of them fixing the distance at 24 feet. These witnesses swore either that there were no signs of blood on the crossing or that they did not notice any. Some of them, however, did not visit the place until the day after appellee was injured. Appellee does not claim that there was no blood on or near the track from 20 to 30 feet north of the crossing, but insists that this blood dropped from appellee's wound when he was carried on and off the train. In our former opinion we stated that the testimony of Jacobs was marked with statements incon-

FOURTH DISTRICT—MARCH, 1913. 511

Cunningham v. Illinois Cent. R. Co., 179 Ill. App. 505.

sistent with the manifest weight of the evidence and we called particular attention to the fact that in his evidence on the first trial, which did not proceed to a verdict, he had said nothing about seeing blood on the crossing. On the last trial he again admitted that he had said nothing about having seen blood marks on the crossing the first time he testified, but stated that the reason he did not was because he was not asked about it. In this connection it is proper to refer to the fact that Anton Daenzer, one of the principal witnesses for appellant, who had been a witness at a former trial, stated ''I did not testify about any blood at the former trial because it was not asked me.'' It also appeared that Mrs. Berry, wife of the station agent of one of appellants at Glen Carbon, who testified as to seeing blood stains 24 feet east of the crossing further, said, ''I testified on the former trial and I did not testify on the former trial that I went down to the blood spot; Did not say anything in my testimony on the former trial about seeing any blood stain.'' In fact there were discrepancies, inaccuracies, and to some extent, contradiction on the part of witnesses on both sides of the case in reference to the question of the existence or absence of blood or blood stains at the crossing, and as to the exact location of the same above the crossing and it was for the jury to determine what the real facts in regard to the matter were.

There was also a conflict in the evidence of the respective parties as to whether appellee, if upon the crossing, was using it for highway purposes at the time he was struck, whether appellee, under all the circumstances of the case, including his own age, was in the exercise of ordinary care and whether the employes on the train of the Toledo, St. Louis & Western Railroad Company, which struck him, were guilty of negligence in not warning appellee of its approach, which we have fully examined, but deem unnecessary for us to discuss in detail here. We consider it sufficient to say that the facts in this case, as presented

and developed on the last trial, were such that we do
not feel authorized in disturbing the verdict of the
jury based upon them, in favor of appellee.

Appellant supported its motion for a new trial by
an affidavit setting up newly-discovered evidence and
insists that by reason thereof, the court below should
have granted a new trial. This evidence, however, was
merely cumulative in reference to the existence of
blood stains east of the crossing, and the affidavit
shows that the persons named do not all agree as to the
exact location of the same. Counsel for appellee do
not deny that there were blood stains on or near the
track east of the crossing but it was not agreed as
to how they got there and upon this question the new
evidence seemed to throw no additional light. There
was no error in the refusal of the court below to grant
a new trial upon the facts set up in the affidavit.

Complaint is made by appellant that appellee on the
trial was permitted over its objection to show by wit-
nesses, the use that had been made of a crossing which
existed east of the present crossing near the coal
washer, before that latter was constructed and also
the existence of a trestle on the railroad right of way
between the depot and the washer, and the use made
of it. It appeared from the proofs that before or at
the time the new crossing was made near the coal
washer, the old one beyond had been removed, and the
people who used the old one continued to make use of
the new crossing. All the proof referred to in refer-
ence to the use of the old crossing and the trestle was
competent as tending to show the use of it made by the
public, including persons connected with the washer,
and the acquiescence of the interested railroad com-
pany, in the use of the crossing over its tracks in that
locality. Appellant also complains that objections
were sustained to questions put by it to one of its wit-
nesses asking whether the crossing was a public or
private crossing. Under the facts in proof in this case
the question as to whether the crossing was considered

by the witnesses as a public or private crossing, was not important, but the nature of the crossing so far as it was involved, was a question to be determined by the jury from all the facts and circumstances in evidence.

The instruction given on the last trial by appellee, in regard to the degree of care and diligence to be used by appellee, under the circumstances surrounding him at the time of the injury, and which this court held to be misleading and prejudicial, was eliminated on the last trial and no complaint is made by appellant of the instructions given for appellee in the record before us. Appellant insists that its refused instruction No. 19 which told the jury that if "plaintiff was on the railroad right of way where he was injured, simply by the acquiescence of the railroad company, he was a mere licensee and the defendants would owe him no other or greater duty as to his safety than if he were a trespasser," should have been given on the ground it is a correct instruction under the rule of law laid down in the case of Illinois Cent. R. Co. v. Eicher, 202 Ill. 556. In that case our Supreme Court held that "a railroad company owes no duty to a person walking along its tracks without its invitation, either expressed or implied, except to refrain from wantonly or wilfully injuring him, and to use reasonable care to avoid injury to him after he is discovered to be in peril; and it makes no difference in that respect whether he is a trespasser, a mere licensee or one who is on the tracks by mere sufferance, without objection of the company." The law laid down in that case, however, is not applicable to the facts in this case. If appellee at the time he was injured, was not on the crossing but was walking along or standing on the tracks north of the crossing, he was a mere trespasser and the rule laid down in the Eicher case, as applicable to· a person walking along the tracks of a railroad would apply. But if at the time he was injured he was on the crossing, then, although he was on the rail-

road right of way and was there, in one sense, by the acquiescence of the railroad company, yet that fact did not necessarily constitute him a mere licensee, but his right to be there and the duty owed him by the railroad company, would depend in a large degree, upon the circumstances surrounding the maintenance of the crossing at that point by such company.

What is here said disposes also of the contention that the court erred in refusing appellants' instruction No. 16. Appellant further insists that the court should have given its refused instruction No. 27. This instruction told the jury they should take into consideration the number of witnesses testifying on any particular point or issue in the case, and if they found that a greater number of witnesses had testified to a certain state of facts on behalf of one party than had testified to the contrary on behalf of the other party, and they believed that the credibility of the greater number of witnesses is equal to the credibility of the lesser number, then they should find the preponderance of the evidence upon the side of the greater number of witnesses. We think this instruction was properly refused for a number of reasons, but it is only necessary to mention one, which is that it wholly ignores the probative force of circumstances appearing in evidence apart from the mere testimony of witnesses, upon a point in issue, which was an important matter to be considered in this case. The other questions raised upon the refusal of instructions offered for appellant, have been considered by us, but they do not appear to involve any error. When the case was here before we stated that the damages awarded appellee, which amounted to $10,548 were, in our opinion, excessive. Upon the last trial, however, the amount recovered was reduced to $8,000; and while that amount would seem to be large, under the circumstances of this case, yet we cannot say it is so excessive as to call for a reversal of the judgment. The judgment of the court below will be affirmed.

*Affirmed.*