# LAKE ERIE AND WESTERN RAILROAD COMPANY
## *v.* FLEMING.

[No. 22,807.   Filed October 7, 1915.]

1. RAILROADS.—*Operation.*—*Invitation to Use Crossing.*—*Duty.*— Where a railroad company operated a switch for the use of a shipper, across which the shipper had constructed a plank roadway as a means of entrance from the street to its premises for the use of those having business with it, an invitation by the railroad company to persons having business with the shipper to use such crossing arose by implication, and imposed upon the company the duty of exercising active vigilance to the extent of reasonable care not to injure them; hence liability by the company for the death of a two-year-old boy who had gone with another to the shipper's premises on business with it, and was killed by the negligent shunting of cars on such switch with such force as to drive them past the crossing, can not be avoided on the theory that the child was a trespasser to whom the company owed no duty save that of avoiding wilful injury to him. (*Jordan* v. *Grand Rapids, etc., R. Co.* [1904], 162 Ind. 464; *Cannon* v. *Cleveland, etc., R. Co.* [1902], 157 Ind. 683; and *Krenzer* v. *Pittsburgh, etc., R. Co.* [1898], 151 Ind. 587, distinguished.)   pp. 514, 517, 519.

2. RAILROADS.— *Operation.*— *Care at Crossings.*— A railroad company owes to all using a public highway crossing the duty to use reasonable care to avoid injury to them by the operation of its trains over same, and the shunting of cars into a switch and against other cars with such force as to send them, unattended and without warning and without ascertaining if the way is clear, across a public highway over such crossing is a gross violation of such duty.   p. 516.

3. RAILROADS.—*Operation.*—*Care at Crossings.*—*Signals.*—Although a railroad crossing is not a public street or highway, it becomes

a public crossing so as to impose upon the company the duty of exercising reasonable care, and liability for breach of it, the same as in the case of a public crossing, if the company has by some act or designation invited or induced persons to so regard and use it, though such rule does not in every case require the giving of signals required by statute to be given at public crossings.　p. 517.

4.　RAILROADS.—*Persons on Tracks.—Implied Invitation.*—The doctrine that mutual advantage must appear before an invitation to go upon the premises of a railroad company will be implied does not prevail in this State.　p. 519.

5.　RAILROADS.—*Injury to Persons on Track.—Answers to Interrogatories.—Contributory Negligence.*—That plaintiff's two-year-old son, who was killed by the negligent shunting of cars upon defendant's switch track, was permitted by its grandfather, in temporary charge of the child, to be taken in a small handwagon across such track to the premises of a poultry company by a boy of fourteen, where the latter went on business, that the latter knew that switching was done on the track, that the grandfather and father knew that it was dangerous for the child to go on the track, and that the father took no precautions to prevent his going thereon, as found by the jury in answer to interrogatories, was not sufficient to overcome the finding against contributory negligence included in the general verdict for plaintiff.　p. 520.

6.　RAILROADS.—*Injury to Persons on Tracks.—Evidence.—Contributory Negligence.*—Where the evidence showed that plaintiff's two-year-old son, who was killed by the negligent shunting of cars on defendant's switch track, went upon the track in the company of a boy of fourteen on an errand of business under circumstances giving rise to their presence upon the track by invitation, and that the older boy was unusually thoughtful and careful for a boy of his age, and that the danger from the negligence of defendant's employes came upon the child so suddenly that his care and quickness of action to avert it were of no avail, the verdict is not open to attack on the ground that the evidence showed that negligence of the child's parents, and of its grandfather, who was temporarily in charge of him, together with that of the older boy, contributed to the child's death.　p. 522.

From Jay Circuit Court; *Daniel W. Comstock,* Special Judge.

Action by Marshall Fleming against the Lake Erie and Western Railroad Company.　From a judgment for plaintiff, the defendant appeals.　(Transferred from the Appellate Court under §1405 Burns 1914, Acts 1901 p. 590.)　*Affirmed.*

*John B. Cockrum* and *John M. Smith,* for appellant.

*John F. Lafollette* and *Emerson E. McGriff,* for appellee.

Cox, J.—This appeal is from a judgment recovered by appellee against appellant for causing the death of appellee's infant son by the alleged negligence of appellant's employes in switching cars.   The errors relied on for reversal are, (1) that the court erred in overruling appellant's demurrer to the complaint, (2) that it erred in overruling its motion for judgment in appellant's favor on answers to special interrogatories notwithstanding the general verdict in appellee's favor, and (3) that it erred in overruling appellant's motion for a new trial.

So far as material to the one objection urged by appellant to the complaint the facts averred in it show that at the time of the injury and death of appellee's son, appellant's railroad ran through the city of Portland and intersected a city street known as Bridge Street which ran north and south; that to the west of Bridge Street was located a cold storage and poultry packing plant along the east side of which, and between the plant and Bridge Street, appellant had constructed a switch or spur track from its tracks which were to the north of the poultry plant; that the entrance to the poultry plant was from Bridge Street westward across the switch over which a crossing about twenty feet wide had been constructed of heavy plank for the use of vehicles and persons on foot going back and forth between Bridge Street and the poultry plant; that said entrance and crossing were in constant daily use by many people and were the only way to reach the plant, all of which was well known to appellant and its employes; that on the day appellee's son, then two years and two months old, was injured, the child was at the home of his maternal grandfather who had in his employ a youth fifteen years old; that the grandfather sent this youth to the poultry house about a block from the grandfather's store for a chicken and some eggs and when he went on this errand

he took the child with him in a small handwagon in which he also had a crate in which to carry the chicken; that he passed along from Bridge Street on the driveway to the poultry house and left his wagon on the east side of the planked crossing and near the south end of the south car of the two there standing; that he then walked with the child over the planked crossing of the switch track into the poultry plant and got the articles for which he had been sent and returned to his wagon where the child climbed into the wagon, but while the youth was engaged in placing and securing the chicken in the crate the child without fault on the part of the youth got out of the wagon and started back over the planked crossing toward the poultry plant and while so on the track one of appellant's freight trains in charge of its employes negligently and carelessly without warning or notice to the child or the youth "shunted, run and kicked" two more freight cars upon the switch without a brakeman or other employe upon them or upon either of the two cars then standing near the planked crossing, and negligently and carelessly used such force and power in running the additional cars upon the switch that they were violently run against the two cars then standing near the planked crossing and thereby pushing them a distance of about thirty feet and upon and over the planked crossing and causing the south end of the south car to strike and run over the child inflicting injuries from which he died the day following.

The sole objection urged by counsel for appellant to the sufficiency of the complaint to withstand a demurrer for want of facts is that the facts averred show that the 1. child was a trespasser on appellant's track at the time he was injured, or was on the track as a bare licensee, and that therefore appellant's sole legal duty toward him was to refrain from willfully injuring him. The same contention arises on the claims that appellant should have had judgment on the answers to the interrogatories and that the court should have awarded a new trial for the assigned

causes that the verdict is not sustained by sufficient evidence and is contrary to law. So, as to this question, these three alleged errors may be considered together. On this question the facts established by the answers follow without material variance the averments of the complaint and on it the evidence fully sustains the complaint. The evidence shows that the switch or spur track was laid by appellant about the time the buildings of the plant were erected, by arrangement between the poultry company and appellant. It was constructed by appellant's employes on the poultry company's ground along side of its building and about six or seven feet from Bridge Street to which the poultry company ground extended. The track was to be owned by appellant and while it was primarily for the use of the poultry company appellant was invested with the right to use it for its own switching purposes when not occupied by cars for the poultry company. About the same time a driveway was constructed by the poultry company from Bridge street across the switch track into its enclosed premises through a slatted gate which was kept open during business hours, and either it or the railroad company planked the crossing, all of which was with knowledge and consent of appellant and by agreement with it. This driveway and planked crossing was used continuously from that time to the time of the injury of appellee's child, a period of about two years, by all of that part of the public having business with the poultry company whether going by foot or by vehicle. It was used almost exclusively by those having business with the poultry company and occasion to visit its premises, the only other entrance being a door on another street which door was kept locked most of the time. The railroad company and its employes had knowledge of the constant use of the driveway and crossing. The poultry company shipped out from the switch about 150 carloads a year and received about 25 carloads. The insistence by counsel for appellant that the youth and the infant son of appellee in whose charge he was were trespassers

or at most naked licensees is based on the fact that the driveway and the crossing over the spur track was not a public highway and crossing and that they were not there on any business connected with appellant.

The cases cited and apparently relied on by counsel to sustain them on this point are wholly without strength to do so. The first one, that of *Jordan* v. *Grand Rapids, etc., R. Co.* (1904), 162 Ind. 464, 70 N. E. 524, 102 Am. St. 217, was the case of a boy who was injured while on a freight car of the railroad company on a switch or side track, by the movement of the cars. He had climbed on the standing car to view some wild horses in an adjoining stockyard and was clearly a trespasser. Another of the cases cited, *Cannon* v. *Cleveland, etc., R. Co.* (1902), 157 Ind. 683, 62 N. E. 8, involved the injury of a young woman by being struck by a moving train on the tracks of the railroad company while she was walking along a footpath five feet wide on its right of way, extending longitudinally along and upon its tracks from one street to another, which the company had constructed for its own use but which the public used for convenience as a short cut between streets, without any allurement or inducement amounting to an implied invitation. She was therefore held to be at most a bare licensee to whom the company owed no duty of active vigilant care. The other case of the three cited in appellant's brief, *Krenzer* v. *Pittsburgh, etc., R. Co.* (1898), 151 Ind. 587, 43 N. E. 649, 52 N. E. 220, 68 Am. St. 252, bears no analogy to the one before us, either in its facts or in what was decided on the question under consideration, to sustain appellant. It was held in that case that a small boy playing on a crossing of a public highway and a railway track was not a trespasser.

It is not denied by counsel of course that a railway company owes to all using a public highway crossing the duty to use reasonable care to avoid injuring them by the

2.   operation of its trains over it; and that to "kick" cars unattended into a switch with such force as to strike

other cars standing on its tracks and send them unattended and without warning and without ascertaining whether the way was clear across a public highway crossing is a gross violation of that duty. It is the law, widely recognized and declared, that although a railroad crossing is not on a public street or highway, it becomes a public crossing so as to impose upon a railroad company the same duty of exercising reasonable care and the same liability for a breach of it as at a public crossing where the company has by some act or designation invited or induced persons to so regard and use it. But this rule does not in every case require the giving of signals required by statute to be given at public crossings. 23 Cyc. 921, and authorities cited, note 52; 3 Elliott, Railroads (2d ed.) §1249; 2 Shearman & Redfield, Negligence (6th ed.) §417a; *Schindler* v. *Milwaukee, etc., R. Co.* (1891), 87 Mich. 400, 49 N. W. 670; *Hanks* v. *Boston, etc., R. Co.* (1888), 147 Mass. 495, 18 N. E. 218; *Murphy* v. *Boston, etc., R. Co.* (1882), 133 Mass. 121; *Pomponio* v. *New York, etc., R. Co.* (1895), 66 Conn. 528, 34 Atl. 491, 50 Am. St. 124, 32 L. R. A. 530; *Cunningham* v. *Illinois Central R. Co.* (1913), 179 Ill. App. 505; *Midland Valley R. Co.* v. *Shores* (1913), 40 Okl. 75, 136 Pac. 157, 49 L. R. A. (N. S.) 814; *Indiana, etc., R. Co.* v. *Barnhart* (1888), 115 Ind. 399, 16 N. E. 121, and cases there cited; *Baltimore, etc., R. Co.* v. *Slaughter* (1906), 167 Ind. 330, 79 N. E. 186, 119 Am. St. 503, 7 L. R. A. (N. S.) 597, note; *Pittsburgh, etc., R. Co.* v. *Simons* (1907), 168 Ind. 333, 79 N. E. 911.

In *Indiana, etc., R. Co.* v. *Barnhart, supra,* it was said that an invitation may be inferred from some act or line of conduct, or from some designation or dedication. *Baltimore, etc., R. Co.* v. *Slaughter, supra,* involved a charge of negligence on the part of the railroad company resulting in injury to a tenant using a farm crossing. After quoting at length from the Barnhart case this court in the opinion written by Gillett, J., said: "The case as pleaded contains some of the elements of dedication, **and**

while we would not be understood as applying that doctrine to a private use, yet the consideration is not without value in determining whether it is just to hold that appellee occupied no higher plane of right, as respects negligence, than a mere trespasser. In *Bennett* v. *Louisville, etc., R. Co.* [(1880), 102 U. S. 577, 26 L. Ed. 235], we find the court observing: 'The deceased, when injured, was using the premises for some of the very purposes for which they had been appropriated, and to which they had, so to speak, been dedicated by the owner.' An essentially similar observation is to be found in *Indiana, etc., R. Co.* v. *Barnhart, supra.* But the word 'invitation', to which the cases on the subject under consideration so often refer, includes, both in its lexicographical and its legal sense, not only an actual bidding, but also an allurement or enticement. While an invitation may not, at least in most circumstances, grow out of mere passivity as respects the condition of the premises, yet the cases abundantly justify the assertion that where an owner constructs a way over his premises in such a manner as apparently to be for the use of certain persons, with the intent that they should use it, and they continue to enjoy it for a considerable period of time, he owes to them a duty to exercise ordinary care for their safety while pursuing the privilege, so far as his own acts are concerned, and this is especially true as to a new and unapprehended danger." And again in the same opinion it was said: "While it is true that it does not appear that the intent of the company in respect to the construction and maintenance of the crossing was ever communicated to any one, or that appellee acted upon the assumption that the crossing was designed for his use, yet taking the subjective intent in respect to the purpose of the construction and maintenance, coupled with the fact that the planking of the space between the rails and the building of the long approach on either side tended to show objectively what the intent was, and adding to this the frequent prior user of the way by appellee, and we have a case wherein it

appears to us that it would be contrary to good morals to permit appellant in effect to shift its ground, after the injury and after it had been haled into court, by asserting that appellee had ventured upon the crossing without invitation and at his own risk. Not to refine too much, it seems to us not unreasonable that the company should be subjected in the circumstances to the consequences of having extended an invitation which had been acted on.''

In the case before us the switch or spur track was brought into existence by the need of the poultry company and for the mutual benefit of that company and appellant. Contemporaneously with its construction the driveway into the premises of the poultry company from Bridge Street was opened and the crossing over the track planked beginning about seven feet from that street. It was practically the only entrance to the poultry company's premises and was manifestly in aid of the common purpose of the poultry company and appellant. The youth who was in charge of appellee's infant son was using the driveway and crossing in connection with the business of the poultry company. They were not merely loiterers there without right and therefore trespassers, but they were there pursuant to an implied invitation to all that part of the public who might have business with the poultry company. Under the facts, the implication of an invitation from appellant is as strong as that of one from the poultry company of which there could be no doubt. The suggestion in the brief for appellant that no invitation from appellant could be implied for the reason that the boys were not using the driveway and crossing on any business with appellant is not of force for if mutuality of interest is one of the essential facts from which to infer an invitation, then it sufficiently appears that appellant had such an interest in the prospering of the poultry company's business as to warrant the inference of an invitation from appellant to the poultry company's patrons to use this entrance to

its premises.   But this court has expressly denied the doc-
trine which prevails in some jurisdictions that mutual ad-
vantage must appear before an invitation can be implied.
*Baltimore, etc., R. Co.* v. *Slaughter, supra,* 338.

In *Pittsburgh, etc., R. Co.* v. *Simons, supra,* the railroad
company built a wire fence along the right of way of its
tracks in Gas City.  Its tracks ran parallel with streets of the
town on both sides of them but where the fence was built
there were no connecting streets for some distance.   A num-
ber of paths had been defined in this distance by people on
foot crossing the tracks.   When the fence was built by the
railroad company it left an opening in it between two posts
at one of these paths and this path and the opening a con-
siderable part of the public had used as a way over the tracks.
It was held that an invitation to use such might be implied.

The case falls easily into the rules declared and it is
manifest that appellant owed a duty of exercising active vig-
ilance to the extent of reasonable care not to injure appel-
lee's infant son.

It is insisted that it appears from the answers to inter-
rogatories that the death of the child was due to the contribu-
tory negligence of his parents, of his grandfather and
of the youth who had him under his care at the time.

5.   This insistence is founded on the following facts found
by the answers.   On the day of the injury to him the child,
with the consent of his mother, was in the temporary cus-
tody of her father.   The grandfather sent Roscoe Collett, a
youth of fourteen years, to the poultry plant to purchase
for him a chicken and some butter and eggs, and permitted
him to take the child with him.   This youth hauled the
child in a small four wheeled handwagon.   A car was stand-
ing at the north end of the planked crossing on the poultry
house switch and the local freight train was switching in
appellant's yards.   Young Collett knew that cars were al-
lowed to stand on the switch near the crossing for the pur-
pose of being loaded and he knew that switching was being

done and cars set for loading on it. The grandfather of the child had knowledge of the surroundings with reference to the location of the poultry house and switch. The grandfather knew that it was dangerous for his grandson to go on the switch and so also did the father. The father took no precautions before his son was injured to prevent him from going with others upon the switch. We are unable to discover anything in these answers to overthrow the finding of the jury by its general verdict that the child's death was not due to any responsible contributory negligence. It is certainly not negligence as a matter of law of itself to permit a boy of fourteen years to take a child of the age of appellee's son about on errands such as this. If it were, then many parents would constantly be guilty if they did not keep their little ones in the closest confinement. The fact that young Collett knew of the cars standing on the switch near the crossing and that switching was done on the track could not have much influence in charging him with negligence in using the planked crossing in the absence of a further finding that he knew that the railroad company, in doing the switching, threw cars across the crossing without warning or care of any kind. The finding that the father and grandfather knew that it was dangerous for the child to go upon the switch crossing is not a finding that they knew that it was dangerous for him to go there attended as he was. And even if the jury had so found it would be for the jury to determine whether it was negligence on their part to permit him to go at the particular time and under the particular circumstances. The public streets are places of danger for the unwary feet of childhood even if attended, but it can not be said as a matter of law that permitting a two-year-old child to accompany a youth of fourteen through the public streets on an errand is negligence.

Finally it is earnestly argued that it appears from the evidence that negligence of the parents, the grandfather and the boy Collett contributed to the death of the child.

There is not even a substantial conflict in the evidence
6. on this question. From it we do not see how the jury
could have done other than it did—that is, find
that the child's death was due alone to the negligence of
appellant's employes. It appears that the Collett boy was
unusually thoughtful and careful for a boy of his age and
that the danger from the negligence of appellant's employes came upon the child so suddenly that his care and
quickness of action to avert it were of no avail. Judgment
affirmed.

'NOTE.—Reported in 109 N. E. 753. As to care which a railroad
company is required to exercise at crossings, see 26 Am. Rep. 207.
As to violation of signal statute or ordinance not intended for plaintiff's benefit as actionable negligence, see 9 Ann. Cas. 429; Ann. Cas.
1912 D 1107. As to duty of railroad to keep lookout for children on
track, as applicable to private railroad, see Ann. Cas. 1914 A 672.
As to duty of railroad to give signals at private crossing, see 21 Ann.
Cas. 568. See, also, under (1) 33 Cyc. 922; (2) 33 Cyc. 954; (3)
33 Cyc. 964; (5) 33 Cyc. 1143; 38 Cyc. 1927; (6) 33 Cyc. 1093.