## Angelo Alpe, Appellee, v. Superior Coal Company, Appellant.

1. EVIDENCE, § 399*—*when medical testimony does not invade province of jury.* In an action to recover damages for personal injuries, where there was no conflict in the evidence and no contention made but that plaintiff's injury was incurred at the time and in the manner alleged, and the only question was as to the relation between the injury and the subsequent condition of the injured member, answers to questions asked of medical witnesses as to the cause of such condition *held* proper, and not an invasion of the province of the jury.

2. EVIDENCE, § 444*—*when medical testimony as to subjective symptoms is incompetent.* Evidence of subjective symptoms given by a physician who has not treated the injured person, but has made an examination to enable him to testify on a trial as to his condition, is incompetent.

3. APPEAL AND ERROR, § 1489*—*when admission of incompetent evidence is harmless error.* Where a physician was allowed, over objection, to testify to subjective symptoms from an examination by him of an injured person whom he had not treated for the purpose of testifying on a trial, and there was no contention or proof to the contrary of such testimony, *held* that the evidence, while incompetent, was but cumulative and not of sufficient importance to justify a reversal.

4. APPEAL AND ERROR, § 1709*—*necessity of making reference in argument to place where errors appear.* Unless reference is made

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

in argument to the abstract or record where alleged errors appear, they will not be considered.

5. DAMAGES—*when evidence as to possibility of cure of injury is speculative.* Evidence by a physician, in response to a question what, if any, additional treatment could be given with a view to relief and cure of an alleged injury, that amputation might or might not relieve it, *held* to be purely speculative and should have been stricken out on motion.

6. DAMAGES, § 244*—*when admission of speculative testimony as to possibility of cure of injury is harmless error.* The speculative testimony of a physician, as to what could relieve or cure an alleged injury, that amputation might or might not, *held* not prejudicial to defendant, in an action to recover damages for such injury, where another physician testified without objection, in effect, that amputation was the only relief for the injury.

7. DAMAGES, § 122*—*when verdict for personal injuries is not excessive.* Verdict for $7,500 *held* not excessive, where plaintiff was 27 years old, strong and healthy prior to the injury, received $2.62 a day as wages, was in a hospital for several months on account of the injury, and as a result thereof had lost the total use of his right leg and had suffered a great deal of pain.

8. DAMAGES, § 244*—*when failure to give proper instructions on is not reversible error.* Instructions, in an action to recover damages for personal injuries, that the jury should fix the damages from all the facts and circumstances in evidence, should properly confine the facts and circumstances to the evidence in regard to the elements of damage, but failure to do so is not prejudicial where the damages awarded are not excessive.

Appeal from the Circuit Court of Macoupin county; the Hon. FRANK W. BURTON, Judge, presiding. Heard in this court at the April term, 1917. Affirmed. Opinion filed October 11, 1917. *Certiorari* denied by Supreme Court (making opinion final).

EDWARD C. KNOTTS, for appellant.

J. H. MURPHY and THOMAS RINAKER, for appellee.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

The declaration in this case consists of a single count wherein it is charged that appellant, on November 5, 1915, and prior thereto, was a corporation and owned and operated a coal mine in Macoupin county and had

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

prior to that time elected not to be bound by the Illinois Workmen's Compensation Act; that appellee on said date was employed as a company man, working on the night shift in said mine under the direction of a foreman named Kelly, who had charge of said shift; that Kelly was operating, on the east side of the bottom of the shaft, a certain motor to which was attached an empty car; that he directed appellee to go between the motor and car for the purpose of uncoupling the same; that appellee, pursuant to said order, went between the motor and car and, while attempting to uncouple the same, Kelly negligently caused the motor to run against the car attached to it, by reason whereof the right leg of appellee was caught between the car and motor, crushing and bruising the same and injuring the nerve in said leg, etc. The only plea was that of the general issue. Appellee recovered a verdict of $7,500, and to reverse the judgment rendered thereon this appeal is prosecuted.

On the day of the accident appellee entered the mine about 4:30 o'clock in the afternoon and was ordered by Kelly, the night boss, to accompany him on a motor attached to an empty car, which latter was being taken to a place in the mine where there was a "bad order" car, for the purpose of unloading the "bad order" car into the empty car attached to the motor. When the motor with the empty car arrived at the place where the "bad order" car was, Kelly directed appellee to uncouple the motor from the empty car and appellee stepped between the empty car and the motor and, while attempting to uncouple the same, Kelly backed the motor so that appellee's leg was caught between it and the empty car, resulting in the injury complained of. Appellee's statement of the facts surrounding the accident is more or less corroborated by two other witnesses. Kelly was the only witness who testified on behalf of appellant upon this question, and whether he was guilty of negligence in backing the

motor was a question of fact for the jury to determine. As appellant had elected not to come under the Workmen's Compensation Act, the question of appellee's contributory negligence is eliminated.

Immediately after the injury, appellee was taken to his boarding house and was treated by Doctor Renner, who found some bruises and contusions upon the leg. Doctor Renner continued to treat appellee for a period of 9 days, at which time he could get about on crutches. Doctor Renner did not consider the injury a serious one and testified that, when he stopped treating appellee, he expected he would be entirely recovered in 2 or 3 weeks. Eleven days after the last visit of Doctor Renner, appellee entered St. Francis hospital in Litchfield and remained there under the care of Doctor Colt for 3 months and 12 days. When he left, he was able to walk on crutches, and Doctor Colt testified that at that time he considered that he had practically recovered. After leaving the hospital, the entire right leg began to shake and jerk, which condition soon became very pronounced and incessant. In March, 1916, he consulted Dr. Van Wormer, who subsequently cut into the limb below the knee and stretched the nerve, which relieved the twitching and jerking for a short time, but the condition soon returned and became worse and has remained so since that time. The evidence for appellee tends to show that the jerking and shaking condition of the leg is caused by a lesion in the anterior tibia nerve at the point of the injury.

The error assigned, most strenuously argued in this court, is that the trial court permitted certain questions to be asked of and answered by medical witnesses as experts, which it is insisted were improper and prejudicial to appellant, for the reason that these witnesses were allowed to testify to ultimate facts in the case, thus invading the province of the jury. Doctor Van Wormer, in answer to a question as to what is the cause of the condition that appellee is now in, to which a general ob-

jection was made, answered: "I would say it was due to the injury." In answer to a hypothetical question, to which a general objection was made, he stated: "I would attribute it to traumatic injury." When asked what traumatic injury he meant, he answered: "To the injury that he received at the time of the accident." And again he was permitted to testify in answer to substantially the same question: "I would attribute it to the injury. To the accident. To the same injury referred to in the former question." Dr. Lockwood was asked to state what was the cause of the jerking and pain from his examination of the limb and from what he observed after that time, and answered, over a general objection which was overruled, that it was due to irritation of the nerve—injury would produce irritation of the nerve. And again in answer to a hypothetical question, stated: "I think it due to an injury to the nerve." Doctor Denby, in answer to a similar hypothetical question, stated that in his opinion the twitching and pain which now exist are due to the injury.

There is no conflict in the evidence and there is no contention made but that appellee's leg was injured at the time of the accident, and that the injury was caused by being caught and squeezed between the bumpers of the 2 cars. None of the questions to which the alleged objectionable answers were given related to the cause of the injury, but to the relation between the injury and the subsequent condition of the leg. In the case of *City of Chicago v. Didier*, 227 Ill. 571, it is stated in the opinion: "There is some apparent confusion in the authorities on the question as to whether, in such cases as this, a medical expert may be asked his opinion as to whether the physical conditions of the injured party are the result of the injuries complained of. Where there is a conflict in the evidence as to whether the plaintiff was injured in the manner claimed, it is not competent for witnesses to give their opinion on that subject; but where there is no dispute as to the manner of the injury,

and the question is as to whether certain physical conditions were caused by the injury complained of, and the determination of the question involves a special skill or trade, or a knowledge of science that does not come within the experience of laymen possessing the education or knowledge common to those moving in the ordinary walks and engaged in the ordinary occupations of life, then persons possessing the special knowledge, skill or science may give their opinions on the subject. Appellant contends that the inquiry should be as to whether the injury might have produced the physical conditions, and not whether it did produce them. Expressions will be found in some cases tending to support that view, but the weight of authority in this State, as well as in other jurisdictions, does not support appellant's contention.'' Many of the prior decisions in this State and of other jurisdictions are reviewed, and the conclusion above quoted has been followed in numerous subsequent cases. *Chicago Union Traction Co. v. Roberts,* 229 Ill. 481; *Fuhry v. Chicago City Ry. Co.,* 239 Ill. 548; *Schlauder v. Chicago & S. Traction Co.,* 253 Ill. 154; *Kelleher v. Chicago City Ry. Co.,* 256 Ill. 454; *Wheeler v. Chicago & W. I. R. Co.,* 267 Ill. 306; *Fellows-Kimbrough v. Chicago City Ry. Co.,* 272 Ill. 71; *Heineke v. Chicago Rys. Co.,* 279 Ill. 210. In the case of *Fuhry v. Chicago City Ry. Co., supra,* appellee was injured by a collision between 2 cars on appellant's street railway, on one of which she was riding as a passenger. Doctor McDonald, a witness in that case, was asked this question: ''To what do you attribute the condition of nervous hysteria that this woman is suffering from, in view of your treatment and what you have learned of her case? To what physical condition do you attribute it?'' He answered, over objection, as follows:

''Due to the injury that she received in her head and the concussion and nervous shock at that time.'' The court in commenting upon this testimony said: ''It

is insisted that while it was competent for the witness to have expressed the opinion that the collision in question might or could have produced the condition he found, it was not competent for him to state that it did do so, the determination of that question being the province of the jury. The question was put to the witness as an expert. It is admitted that appellee had received injuries in the collision. The witness had described them. He knew and had described her subsequent physical condition. The question did not relate to the cause of her injuries. It concerned the relation between her injuries and her subsequent condition. Its object was to obtain the witness' opinion as to whether the condition could, would or did result from the injuries. The question whether it did so result was for the jury to determine, but, being one not within the knowledge of men of ordinary experience, the opinions of the physicians having knowledge of that subject were proper to be considered and did not invade the province of the jury. It is immaterial whether the witness testified that the injury might or could cause the condition or that it did cause it.'' It is apparent that under the facts as they appear in the case at bar it was not error to admit the evidence complained of.

Doctor Denby stated that, objectively, he could not determine the amount of pain appellee was suffering, but from his manipulations he determined that the right leg, as compared with the other, was the more sensitive but that he did not come to this conclusion independent of his actions. A motion was then made by appellant to have the answer excluded, which was overruled. Evidence of subjective symptoms, given by a physician who has not treated the injured person but has made an examination to enable him to testify on a trial as to his condition, is incompetent. *Greinke v. Chicago City Ry. Co.*, 234 Ill. 564; *Chicago & E. I. R. Co. v. Donworth*, 203 Ill. 192. But in this case there neither is nor was any contention or proof that the condition of the right

leg did not cause appellee pain and was more sensitive than the other. This evidence, while incompetent, was but cumulative and not of sufficient importance to justify a reversal of the judgment. *Fuhry v. Chicago City Ry. Co., supra; Greinke v. Chicago City Ry. Co., supra; Casey v. Chicago City Ry. Co.*, 237 Ill. 140.

It is urged that it was error for the court to permit Doctor Denby to a question put to him as to what, if any, additional treatment could be given with a view to relief and cure of the alleged injury, to answer, "Amputation of the leg might or might not relieve it." No reference is made in the argument to the page of the abstract or record where this testimony may be found, and as we have repeatedly held that unless reference is made to the abstract or record where alleged errors appear, they would not be considered. This evidence was purely speculative and should have been stricken out on motion. However, appellant could not have been prejudiced thereby for the reason that Doctor Van Wormer, both on direct and cross-examination, testified without objection that the only thing that could be done to relieve the condition of the leg was to sever the nerve and that would cause the loss of the use of the limb, which in turn would necessitate its amputation, and appellant makes use of this testimony of Doctor VanWormer to support the argument that it was the duty of appellee to have his leg amputated and thus reduce the damages. Counsel for appellant in his argument uses the following language: "Taking the testimony of appellee's witness, Doctor W. W. Van Wormer, his attending physician, as to the future cure or relief, all that is required to cure the twitching is to amputate the limb, either above or below the knee. That being true, it was the duty of appellee to have the limb amputated and effect a cure. But appellee has not seen fit to have this done, evidently preferring to appear before the jury with the leg twitching, in the hope of arousing sympathy and thereby increasing the

amount of the damages, if any were awarded." It thus clearly appears that the testimony of Doctor Denby complained of could not have had a tendency to enhance the damages in the eyes of the jury, and in no other way could it have been harmful to appellant.

Appellee was a young man, 27 years of age, weighed about 175 pounds when he was injured and before which time he had always been strong and healthy. He worked at the mine as a company man and received $2.62 a day. The evidence tends to show that he has lost the total use of his right leg and he has since the accident suffered a great deal of pain. Larger verdicts for similar injuries have been sustained, and under the circumstances as they appear, including the time of employment which appellee has lost, we are of the opinion that the damages are not excessive. *Elgin, J. & E. Ry. Co. v. Raymond,* 148 Ill. 241; *Chicago & G. T. Ry. Co. v. Spurney,* 197 Ill. 471; *Chicago City Ry. Co. v. Wilcox,* 138 Ill. 370; *City of Chicago v. Loebel,* 228 Ill. 52; *Pierson v. Lyon & Healy,* 243 Ill. 370; *Wilcke v. Henrotin,* 241 Ill. 169; *Biggs v. Peoria & P. U. Ry. Co.,* 182 Ill. App. 613; *Cunningham v. Illinois Cent. R. Co.,* 179 Ill. App. 505.

Two instructions given for appellee are complained of as being erroneous. They are as follows:

(3) "The court instructs the jury that it is not necessary or proper for the plaintiff in this case to produce witnesses to testify as to the amount of damages he should recover from the defendant, but that, if the jury shall find a verdict for the plaintiff, then it is the duty of the jury to fix the amount he shall recover, from all the facts and circumstances in evidence."

(4) "The court instructs the jury that if you shall find a verdict in this case in favor of the plaintiff, then it becomes your duty to fix by your verdict the amount of damages the plaintiff shall recover.

"And the court further instructs you that such dam-

ages should be an amount sufficient under the evidence to compensate the plaintiff for the injury or injuries, if any, which the evidence shows he has sustained. And in fixing such amount you have the right and should take into account so far as may be shown by the evidence, any loss of time he sustained and any diminished capacity hereafter for labor resulting from the neglect of the defendant company alleged in the declaration, and any pain and sufferings he may have undergone or may hereafter undergo by reason of such injury or injuries, if any, and the permanence of such injury, if any permanent injury is shown by the evidence, and from all the facts and circumstances in evidence you should fix the amount of damages at such sum as will reasonably compensate the plaintiff for such injury or injuries, if any, he may be shown to have sustained.''

The criticism of these instructions is that they permit the jury to fix the damages from all the facts and circumstances in evidence without any reference or limitation to the evidence bearing upon the question of the damages sustained. They would have been more accurate if they had confined the facts and circumstances in evidence to the evidence in regard to the elements of damages. But it could only have been shown that they had been prejudicial to appellant if the verdict had awarded excessive damages. The verdict not being excessive, appellant was not prejudiced. Similar instructions have been approved. In the case of *Illinois Cent. R. Co. v. Cole*, 165 Ill. 334, an instruction concludes as follows: ''And you should allow to him as damages such sum as * * * from all the facts and circumstances in evidence, will be a fair and just compensation to him for the injuries so sustained.'' A similar instruction was sustained in *West Chicago St. R. Co. v. Johnson*, 180 Ill. 285.

There is no reversible error in the record and the judgment will be affirmed.

*Affirmed.*