### McGUNEGILL v. CHESAPEAKE & O. RY. CO.

No. 10565.

United States Court of Appeals Seventh Circuit.

Oct. 8, 1952.

Edward B. Henslee, Walter N. Murray, Melvin L. Griffith and Henry W. Lehmann, all of Chicago, Ill., for appellant.

Albert Harvey Cole, Peru, Ind., Herbert J. Patrick, Indianapolis, Ind., for appellee.

Before DUFFY, FINNEGAN and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

Following a jury trial, which resulted in a verdict for plaintiff, defendant's motion for judgment notwithstanding the verdict was granted. From this ruling this appeal is prosecuted.

The proof adduced on behalf of plaintiff, when viewed in the light most favorable to him, tends to establish the following facts. Defendant maintains a right of way running through Muncie, Indiana, in a northwesterly-southeasterly direction, on which are two parallel tracks: the main through track located to the north and east of the center

of the right of way and a passing track directly to the south and west of the other. Washington Street runs east and west and comes to an end just short of the west line of defendant's right of way. However, a gravel continuation crosses the right of way, providing ingress and egress for the occupants of and visitors to several buildings and a public swimming pool located east of the tracks. As a consequence defendant maintains a crossing where the gravel road intersects the right of way.

On September 5, 1949, plaintiff, a boy of six years, and a companion, aged 10, were playing in the neighborhood to the west of the crossing. A noise of hammering, emanating from the vicinity of the swimming pool, attracted their curiosity and they decided to proceed to that spot and find out what was taking place. Plaintiff was walking; his companion rode a bicycle. They approached the crossing, which was attended by neither watchman nor flagman, and found on the main track a freight train being pushed in the northwesterly direction by an engine at its southerly end. Plaintiff's companion dismounted from his bicycle and left it leaning against a utility pole. The boys then crossed the passing track and stood near the train waiting for it to pass. Plaintiff gave his companion a playful push and was pushed in return. Plaintiff then started to run from his companion, traveling parallel to the moving train. He stumbled and fell, when one of his feet hit a depression in the limestone surface of the crossing. His right leg somehow crossed the westerly rail of the track under the train and was amputated just below the knee by one of the wheels.

Upon these facts, plaintiff contends, actionable negligence on the part of defendant is shown in two respects: (1) failure to guard properly the crossing during its use by a train; (2) failure to maintain the surface of the crossing in a safe condition, i. e., in allowing the depression to form in it. Thus the sole question presented by this appeal is the substantive sufficiency of the facts. If they are not sufficient to constitute a cause of action, the trial court did not err in setting aside the verdict.

■ The jurisdiction of the federal court having been invoked by reason of diversity of citizenship,[1] we look to the law of the forum and to that of the state wherein the alleged tort was committed, they being in this instance the same, to determine the legal effect of plaintiff's proof.

■ At the outset defendant raises a question as to the nature of the crossing, i. e., whether it is public or private, asserting that a different degree of duty exists with respect to its maintenance of the two types. There is no evidence that the continuation of Washington Street had come about "by addition, plat or otherwise, dedicated to the public use" so as to impose upon defendant the statutory duty of safe maintenance found in Burns' Indiana Statutes Ann., Sec. 55–618. However, the crossing here is at least as public in character as that involved in Lake Erie & W. R. Co. v. Fleming, 183 Ind. 511, 109 N.E. 753. There it was held that the railroad, by the very maintenance of the crossing coupled with the erection of customary warning signs, impliedly invited the public to use the crossing and, in so doing, was subjected to the duty of prudent operation of its trains thereon. Similar evidence warranting an implied invitation is present here. We conclude, then, that defendant owed to those using the crossing the duty to maintain it.

■ However, we think defendant did not breach this duty in failing to have a watchman or flagman present at the crossing when it was occupied by a train. Under certain circumstances a duty rests upon railroad companies to provide adequate warnings of trains approaching crossings, such as flasher devices, gates, watchmen or flagmen. Defendant's company rules provide for crossing warnings by a crewman of an approaching train, in the absence of a watchman or flagman stationed at the crossing. It is admitted that there was no compliance with this rule. But could the breach of this duty have possibly been the

1. Plaintiff is a citizen of Indiana; defendant is incorporated in Virginia.

cause of plaintiff's injury? Plaintiff testified that the moving train had approached and was in full occupation of the crossing when he arrived. He was fully aware of its presence. Thus failure to warn him of its approach could in no way have contributed to plaintiff's injury.

But plaintiff asserts: "On this evidence, the jury could reasonably infer that but for the failure of the defendant to comply with its rule, the accident and injury to plaintiff would not have occurred." The fallacy of this reasoning is that it ignores any question as to the legal duty of defendant to continue to guard the crossing once it was occupied by the train and plaintiff had become fully aware of its presence. In short, is defendant under a duty to take affirmative action to prevent persons from entering upon the crossing, when they have actual knowledge, from the fact of actual presence of the train, of the danger present? The Indiana decisions impel a negative answer. Thus, in Indiana Harbor Belt R. Co. v. Jones, 220 Ind. 139, 143, 41 N.E.2d 361, 363, the court said: "Nor is [a railroad company] obligated to have a watchman to keep children off its right of way * * *." There being no duty to maintain a crossing guard under the facts presented, the failure to do so cannot constitute actionable misconduct. Cleveland, C., C. & St. L. R. Co. v. Means, 59 Ind.App. 383, 104 N.E. 785, 108 N.E. 375.

■ We turn then to the question of reasonably safe maintenance of the surface of the crossing. Defendant concedes that as a general proposition the roadway of a crossing must be kept in such condition that the public may safely employ it for the purpose intended. However, we must bear in mind that at the time of the accident plaintiff was engaged in play on the crossing; he was not using it for the purposes as to which the law protects users. Defendant asserts that this momentary departure from legitimate purpose changed plaintiff's status from that of an invitee to one of at most a bare licensee. To resort to label attaching of this nature seems, to us, under the circumstances wholly unnecessary. Again we need but ask: What is the duty owed plaintiff by defendant in this respect? It must maintain the crossing in such condition that plaintiff may safely employ it for the purpose of crossing the track. But, defendant is under no duty to maintain the roadway in such condition that plaintiff may safely engage in frolic on the railroad right of way or run along the train, unmindful of where he places his feet, enhancing the probability of stumbling.

We have reached this conclusion despite language in Krenzer v. Pittsburgh, C., C. & St. L. Ry. Co., 1896, 151 Ind. 587, 43 N.E. 649, cited with approval in Citizens St. R. Co. v. Hamer, 1902, 29 Ind.App. 426, 62 N.E. 658, which seems to imply that railroads should reasonably anticipate the presence of playing children on their tracks, and should consequently keep a lookout for them in the operation of their trains.[2] However, these cases do not stand for the broader proposition that crossings must be maintained in order to accommodate safely a child's playful activities as he voluntarily approaches a moving train. So to interpret them would be to impose a duty on defendant of maintaining its property for uses other than and beyond those for which it exists. The overall rationale of the Indiana decisions is contrary to the imposition of such a restriction on the use of railroad property. See Cleveland, C., C. & St. L. R. Co. v. Means, 59 Ind.App. 383, 104 N.E. 785, rehearing denied 59 Ind.App. 412, 108 N.E. 375; Holstine v. Director Gen'l of Railroads, 77 Ind.App. 582, 134 N.E. 303. Such a limitation is not imposed in the previously cited cases, for those authoritative decisions require only the exercise of reasonable care, in view of invited or permitted play of children, while the railroad equipment is being used for its intended purpose.

The judgment is

Affirmed.

2. In the Krenzer case there was an allegation and proof of notice to the railroad that children frequented the portion of track where the injury occurred.