CALVERT ET AL. *v.* NEW YORK CENTRAL RAILROAD
COMPANY.

[No. 26,590. Filed January 14, 1936. Rehearing denied
April 8, 1936.]

*Harry Richwine* and *Shively & Arnold,* for appellants.

*Farabaugh & Pettingill, Louis Chapleau* and *Bertrand Walker*, for appellee.

FANSLER, J.—The appellant Calvert was the owner of a truck which was damaged by collision with appellee's cars. The truck was insured against damage by collision by the appellant insurance company. This action was brought against appellee to recover the amount of the damage. There was a trial, and, at the conclusion of the evidence, the jury was instructed to return a verdict for appellee, which was done, and there was judgment accordingly.

The only errors assigned involve the correctness of the court's action and the sufficiency of the evidence to sustain a verdict for appellants.

From the evidence it appears that appellee maintained a spur track upon its own private right of way, extending into land upon which there was a considerable industrial development; that a factory building was being constructed adjacent to appellee's right of way, and that appellant Calvert, with his truck, was engaged in hauling earth for a subcontractor who was making excavations. Dirt from the excavation was being hauled by many trucks, including appellant Calvert's, across the private right of way and track of appellee, and dumped beyond. On the day, or two days, before the accident the subcontractor for whom appellant Calvert was hauling, had, without the knowledge or consent of appellee, established a crossing over appellee's tracks at a point about 150 feet from the point of the accident in question and nearer to appellee's main line, by making a fill, over which trucks engaged in hauling earth. On the day of the accident this crossing was abandoned, and the subcontractor made a fill for another crossing at the place where the accident occurred, and appellant Calvert's truck, which was damaged, undertook to make the first crossing over the tracks at the new point and

was mired down and stalled on the track. Some time before the truck attempted the crossing, appellee's switching crew had pulled a cut of cars out of the switch, and, when appellant's truck had been stalled for about ten minutes appellee's switch engine pushed a cut of cars from its main track onto the spur track, cut them loose from the engine, and permitted them to run down the track by their own momentum. A switchman or brakeman rode on the front of the cut of cars, and when he saw appellant's truck upon the tracks he immediately applied the brakes on the cut of cars and succeeded in stopping just as the first car came in contact with appellant's truck, without doing any material damage to the truck. The conductor and engineer of the switching crew, observing that the cut of cars did not continue down the track to the place at which their contents were destined to be unloaded, and, without observing or knowing of the appellant's truck upon the tracks, came into the spur track with their engine, which they pushed against the cut of cars, causing it to push against, and crush, and destroy appellant's truck. As soon as appellee's brakeman observed that the engine was coming into the spur he at once attempted to attract the attention of the engine crew and signal them to stop, but before he could be seen and his signals observed by the engineer the damage had been done. The switching crew had observed trucks in and about the premises working, and, for a day or two, had seen them crossing appellee's spur track.

The complaint is upon the theory that appellee is liable for the damage to the truck because of acts of negligence, which are described as follows: "First, that, having knowledge that the truck was on the lead track, the defendant carelessly and negligently switched therein a certain string of cars, and failed to stop them before the collision; second, failure of the defendant,

through its brakeman, to properly signal the fact of the presence of Calvert's truck upon said lead track at said crossing and in a situation where it could not leave the same before a collision, and notwithstanding ample time provided to communicate such signal; third, appellee's failure to so set the brakes upon said string of cars as the same came toward said truck so as to stop the same before colliding with the truck; fourth, a failure to provide some means of signaling, knowing the fact that Calvert and others were operating trucks in that vicinity and over the crossings, or to provide some means of communicating warnings to the engineer upon the engine, of the fact that Calvert's truck was stalled thereon; and, fifth, after the string of cars had come in actual contact with Calvert's truck and had stopped, proceeding, in disregard of the hazard while the brakeman knew thereof, to continue on pushing westwardly and inflicting the more serious damage incurred after the string came to a stop."

As to the first charge of negligence, there was no evidence that appellee or its servants had knowledge that the truck was on the lead track when the cars were switched thereon. As to the second, there is no evidence of the brakeman's failure to signal, nor that there was ample time for communicating with the engineer. As to the third, there is no evidence of any material damage to the truck caused by the first collision. It appears beyond question that as soon as the brakeman knew that the truck was on the track he made every effort to set the brakes in time to avoid the collision. As to the fourth, appellee owed no duty to appellant to provide a signal system which would protect him from injury or damage during his trespasses upon appellee's property and tracks. As to the fifth, knowledge on the part of the brakeman that appellant's truck was in a position of danger was not effective for

the purpose of providing appellee with a clear chance to avoid the injury, since the brakeman was not in control of the locomotive, and therefore, as an agent of appellee, had no chance himself to avoid the injury. In order that appellee might have had a clear chance to avoid the injury, its engineer, who was in charge of the moving force, the stopping of which alone could avoid the injury, must have had knowledge of the facts in time to stop the engine. It is as though appellant had telephoned to the office of appellee that his truck was stalled on the tracks. Such a communication would not provide appellee with a last clear chance to avoid the injury, unless and until it had opportunity to communicate the facts to its engineer who was operating the engine which it was anticipated would cause the injury.

Appellant Calvert was working with his truck on a project in which the appellee had no interest. It is contended that appellee had an interest in the project, since it was interested in hauling material to the factory which was being built. But this is only such an interest as the entire community had, since the entire community might be expected to profit indirectly by an increased industrial development, and hence there is no evidence of an implied invitation to be upon appellee's premises. There is no evidence whatever of an express invitation. It is clear from the undisputed facts proven that appellant was a trespasser. It is true that appellee's employees may have known that appellant and others were trespassing, and had been trespassing for one or more days previous to the accident, but, even though this might be treated as acquiescence in the trespass, and hence a license to be upon appellee's property, the duty of the appellee would be the same.

Where a trespasser or mere licensee is upon the private right of way of a railroad company, the company

owes no duty to maintain a lookout or a system of signals to prevent the trespasser or licensee being injured. There was no duty to observe care in order to know whether appellant was in a position of danger or whether he might be injured. Its sole duty was to refrain from wantonly or intentionally inflicting injury, or, having become cognizant that appellant was in a position of peril, to use due care in taking advantage of any chance that it might have to avoid the injury. *Jeffersonville, etc., R. R. Co.* v. *Goldsmith* (1874), 47 Ind. 43; *Chicago, I. & L. Ry. Co.* v. *Pritchard, Admr.* (1906), 168 Ind. 398, 79 N. E. 508; *Terre Haute, etc., Traction Co.* v. *Stevenson* (1919), 189 Ind. 100, 123 N. E. 785, 126 N. E. 3; *Cleveland, C. C. & St. L. Ry.* v. *Means* (1915), 59 Ind. App. 383, 104 N. E. 785.

There is nothing to indicate that the servant of the appellee, in charge of the cut of cars, failed to use due care to stop the cars as soon as he saw the perilous position in which appellant was located, or that he failed to make every reasonable effort to notify the engineer in charge of the engine in time to avoid further injury. The very term, "last clear chance," implies that appellee must, in fact, have a chance or opportunity to avoid the injury, but if only its brakeman, who was not in control of the active agency which threatened injury, knew of the peril, it is obvious that there was no chance or opportunity to stop the engine until he could with what means he had at hand convey his information to the engineer in charge. There was no duty to maintain any special system of signaling or to maintain lookouts to search for perils into which appellant might have gotten himself.

Judgment affirmed.