KELLY *v.* NEW YORK, CHICAGO & ST. LOUIS
RAILROAD COMPANY.

[No. 15,137. Filed January 27, 1936. Rehearing denied March
12, 1936. Transfer denied April 30, 1936.]

*Paul Brown, Cornelius H. Harrington, Charles E.
Carpenter, Walter G. Parry* and *Owen S. Boling,* for
appellant.

*Harker & Irwin, John W. Macy* and *W. J. Stevenson,* for appellee.

WIECKING, J.—This was an action by Agnes Kelly, the plaintiff below, against the New York, Chicago & St. Louis Railroad Company, appellee, for damages on account of personal injuries sustained by her when struck by a locomotive belonging to the appellee in the city of Newcastle, Indiana, on the 21st day of December, 1928. The complaint is in five paragraphs, all of which alleged, in substance, that on the day in question the appellant was walking along the sidewalk on Broad Street in Newcastle, Indiana, approaching a point where Broad Street intersected with and crossed the railroad tracks of the appellee. That Broad Street ran east and west and the railroad tracks ran northwest and southeast. The complaint further alleged in each paragraph that the appellant was exercising all due care, caution and diligence for her own safety and protection; that by the negligence of the appellee company, she was struck by a locomotive engine, was knocked down and thrown to the street and sustained serious and permanent injuries, that she had been compelled to expend the sum of Three Thousand Dollars endeavoring to be cured from her injuries and each paragraph prayed judgment in the sum of Fifty Thousand Dollars. The five paragraphs of complaint differed only as to the nature of the negligence alleged. The negligence alleged in the first paragraph of complaint was the operation of the train of the appellee at a high and dangerous rate of speed; the second paragraph alleged that it was the duty of the appellee to employ and keep a watchman at the crossing and that it had not done so; the third paragraph alleged that it was the duty of the watchman employed by the appellee to warn the plaintiff and to guard her against danger from being struck by the train, which he failed to do; the fourth paragraph al-

leged negligence in that the appellee operated a railroad train drawn by a steam locomotive engine without sounding a whistle or ringing a bell or giving any other notice or warning of the approach of the train; and the fifth paragraph of complaint alleged the employment of a flagman or watchman by the appellee, that such watchman or flagman had been employed for a long time at such crossing and that appellant relied upon the fact that said watchman of appellee customarily warned pedestrians of the approach of trains, that said flagman or watchman so employed by the appellee failed and neglected to warn the appellant and that the appellee invited the appellant to cross over the tracks and rails and at the same time caused its locomotive and cars, traveling at a high and dangerous rate of speed, to be operated over the crossing. A demurrer was filed to this complaint which was overruled by the court. The company then filed its answer in general denial to the complaint which closed the issues and the cause was submitted to a jury for trial.

The jury returned a general verdict for the appellant and assessed her damages at Eight Thousand Dollars. At the same time the jury returned into the court the answers to twenty-seven interrogatories which were submitted by the appellee. The appellee filed a motion for judgment on the answers to the interrogatories on the ground that the answers were in irreconcilable conflict with the general verdict for the appellant, which motion was sustained by the court and judgment entered for the appellee, that the appellant take nothing by her complaint and that the appellee have judgment for costs.

The appellant appealed to this court assigning as error:

1. The court erred in sustaining the appellee's motion for judgment upon answers to interroga-

tories returned by the jury, notwithstanding the general verdict of the jury.

2. The court erred in rendering judgment for and on behalf of appellee upon the answers of the jury to interrogatories returned with the general verdict in said cause.

3. The court erred in refusing to render judgment for and on behalf of the appellant upon the general verdict found and returned by the jury.

Only one question is presented to this court by the assignment of error. In examining that question we can consider only the pleadings, the general verdict, the interrogatories and the answers thereto in determining whether a judgment should have been entered on the answers to the interrogatories. *City of Jeffersonville* v. *Gray* (1905), 165 Ind. 26, 74 N. E. 611; *Indiana Railway Co.* v. *Maurer* (1903), 160 Ind. 25, 66 N. E. 156; *Talbot* v. *Meyer* (1915), 183 Ind. 585, 109 N. E. 841; *Kingan & Co.* v. *Albin, Administratrix* (1919), 70 Ind. App. 493, 123 N. E. 711. The answers to interrogatories only control the general verdict when both cannot stand, and when they are so antagonistic that they cannot be reconciled by any evidence admissible under the issues. *Wabash R. R. Co.* v. *Biddle* (1901), 27 Ind. App. 161, 59 N. E. 284, 60 N. E. 12; *Pittsburgh C. C. & St. L. Ry. Co.* v. *Lightheiser* (1907), 168 Ind. 438, 78 N. E. 1033.

In view of the above decisions, it is apparent for the purposes of this decision that we must assume that the appellee was guilty of each and every charge of negligence averred in the complaint which could be properly proven under the issues joined and the sole question to be determined by this court is whether or not the answers to the interrogatories established contributory negligence as a matter of law.

The jury in its answers to the interrogatories found that at the time of the injury involved in this action, the appellant Agnes Kelly was possessed of good eye-

sight, had a good sense of hearing and was a person of ordinary intelligence. That she was walking east near the center of the sidewalk on the south side of Broad Street in the city of Newcastle, Indiana, toward the track of the appellee railroad company. That the appellee company's tracks run from northwest to southeast across Broad Street and that Broad Street in the city of Newcastle, Indiana, runs east and west, being forty feet in width at the point of its intersection with appellee's tracks and in addition to the width of the street there was a sidewalk thirteen feet in width on each side of Broad Street. There was at watchman's shanty just north of the sidewalk on the north side of Broad Street and seven feet from the west rail of appellee's track, which watchman's shanty was approximately seven feet long north and south and approximately six feet three inches east and west; that it was ten feet in height at the ridge or comb and seven feet at the eaves; that there was a brick building on the north side of Broad Street, the southeast corner of which was approximately twenty-two feet and three inches from the west rail of appellee's track, the east wall of which building was parallel with the appellee's track and that there was an open space nine feet in width between the brick building and the watchman's shanty. There was an interlocking tower near appellee's track and about 592 feet north of Broad Street. That after the appellant reached a point 25 feet from appellee's track, there was nothing other than the watchman's shanty that would obstruct her view of a train on that track any place between the interlocking tower and Broad Street. That the comb or ridge of the watchman's shanty was parallel with the appellee's tracks. That the appellant was familiar with the location of the railroad track and of the watchman's shanty and other buildings and structures surrounding the in-

tersection. That the appellant stopped approximately 20 feet from the west rail of the appellee's tracks and looked to the north for an approaching train. That her view from that point along the appellee's track was obstructed by the watchman's shanty and that the appellant knew that her view was so obstructed. That immediately after looking northward the appellant looked southward along appellee's track and then immediately walked east toward the appellee's track without again looking either to the north or south and continued to walk without looking in either direction until she was so struck by the train. That the appellant did not at any other place look northward before being struck and that the appellee's train which struck the appellant approached and crossed Broad Street at a speed of approximately 25 miles per hour.

Appellee contends that the answers to the interrogatories show affirmatively, as a matter of law, that appellant was guilty of contributory negligence and that her actions as outlined in the answers to the interrogatories above narrated preclude her recovery under the general verdict and that such answers cannot be reconciled with the general verdict.

We cannot agree with this contention where the answers to the interrogatories show that the appellant did stop, look and listen before attempting to cross the railroad track. It is not for the court to say as a matter of law whether she looked at exactly the right moment or in each direction in proper succession or from the place most likely to afford information. That question was peculiarly within the province of the jury. When we take into consideration all of the facts determined against the appellee by the general verdict in this case, that there was no whistle or bell sounded nor other warning given of the approach of the train, that the watchman was not on duty, or if he were on duty, neg-

lected to warn the appellee of the approach of the train and that the appellee's train was being operated at a high and dangerous rate of speed, found by the jury to be 25 miles per hour, then it is a matter for the jury to determine under all of the circumstances in the case whether the appellant exercised ordinary care in crossing the tracks or whether her want of care contributed to her injury. It is true that the jury by answer to interrogatories found that appellant's view was somewhat obstructed as she looked northward along appellee's tracks but we are unable to say as a matter of law that it was her duty to look at any other point as she approached the track where a train approached the crossing at a high and dangerous rate of speed without giving any of the customary or statutory warning signals designed and intended to warn travelers approaching its crossings.

> "While a traveler on a public highway on approaching a railroad crossing is required to use every reasonable precaution and keep a lookout and to listen attentively for an approaching train, still he is not bound to anticipate that any railroad company will be so reckless and so unmindful of its duty as to fail and neglect to give the signals and alarms as required by law to warn all travelers approaching any of its crossings, and whose danger is increased by reason of such neglect on its part, but rather he may rely on the railroad company performing its duty." *Cleveland, etc., R. Co.* v. *Van Laningham* (1912), 52 Ind. App. 156, 164, 97 N. E. 573. See also *Pittsburgh, etc., R. Co.* v. *McNeil* (1904), 34 Ind. App. 310, 69 N. E. 471; *Chicago, etc., R. Co.* v. *Gorman* (1915), 58 Ind. App. 381, 106 N. E. 897.

The answers to the interrogatories likewise disclose that there was an open space between the watchman's shanty and the brick building on the north side of Broad Street directly opposite the place from which she looked, the watchman's shanty being some five feet east of her

line of vision looking northward. The answers also disclose that she stopped across the street some sixty feet south of the watchman's shanty and the extent to which her view was obstructed is not disclosed by the answers to the interrogatories.

In a similar case in this court, we said:

"The answers to the interrogatories in the case at bar do not show that appellee did not look and listen. They show that he did not look to the east while between the passing track and the main track. His failure to look east while between such tracks *may* amount to contributory negligence, but such negligence can be declared as a matter of law only when the answers show attending conditions so fully as that it can be said that he did not use ordinary care in selecting a place from which to look. The general verdict finds that due care was used by him in that behalf, and the facts specially returned do not exclude the existence of circumstances warranting such conclusion. (Citing authorities.)" *Baltimore, etc., R. Co.* v. *Rosborough* (1907), 40 Ind. App. 14, 19, 80 N. E. 869. (Our italics.)

So in the present case the answers to the interrogatories show affirmatively that appellant did look. They show that she did not look from a point 20 feet west of the track until she was struck. Her failure to look northward while traveling that distance *may* amount to contributory negligence but the question of whether or not she did use due care was one of fact for the jury.

" 'If the facts exhibited are of a character to be reasonably subject to more than one inference or conclusion, under established rules of law, then the ultimate facts of contributory negligence, or due care, should be determined by the jury.' " *Baltimore, etc., R. Co.* v. *Rosborough, supra; Greenawaldt* v. *Lake Shore, etc., R. Co.* (1905), 165 Ind. 219, 74 N. E. 1081; *Stoy* v. *Louisville, etc., R. Co.* (1903), 160 Ind. 144, 66 N. E. 615.

By its general verdict the jury found that appellant was free from negligence which contributed to her in-

jury. We do not believe that the answers to the interrogatories were so antagonistic to the general verdict that they could not be reconciled with it.

Judgment reversed with instructions to the court below to enter judgment for the appellant upon the general verdict returned by the jury.