THE NEW YORK CENTRAL RAILROAD COMPANY *v.* WYATT, ADMINISTRATRIX, ETC.

[No. 19,398. Filed July 26, 1962. Rehearing denied September 12, 1962. Transfer denied October 9, 1963 with opinion reported in 193 N. E. 2d 63.]

208

*Marvin A. Jersild,* of Chicago, Illinois, *John A. Stocker,* of Indianapolis, *Owen W. Crumpacker, Theodore M. Gemberling* and *Crumpacker, Gemberling & Enslen,* of counsel, of Hammond, for appellant.

*Murray, Mannon, Fairchild & Stewart, James J. Stewart* and *Richard W. Guthrie,* all of Indianapolis, for appellee.

RYAN, J.—Appellee (the plaintiff below), Helen Lucille Wyatt, Administratrix of the Estate of Charles B. Wyatt, deceased, filed her action against the appellant, The New York Central Railroad Company, to recover damages for the death of her husband, Charles B. Wyatt. Trial was had by a jury, which resulted in a verdict in the sum of Seventy-two Thousand Five Hundred ($72,500.00) Dollars in favor of the appellee, and consistent judgment was rendered thereon. Appellant filed its motion for a new trial which contained some thirty-nine (39) specifications of error. The motion for a new trial was overruled, and the appellant now assigns as error the overruling of its motion for a new trial.

The complaint of the appellee in substance alleged that the appellant was negligent in operating its train at an excessive speed; failure to give reasonable signals; failure to keep a reasonable lookout; failure to maintain proper control of the train; and permitting its engine to be operated by a "young and inexperienced employee who was not regularly employed as an engineer and who was not qualified and competent to operate said locomotive."

Appellant first argues that the jury's verdict is not sustained by sufficient evidence and that the trial court erred in refusing to direct a verdict. The material facts established by the evidence most favorable to the appellee are these:

Wyatt was employed by the Cox Motor Express Company as a truck driver and on the date of his death had made a delivery of glass bottles to the Schenley Distilleries plant in Lawrenceburg. Appellant owned and operated a spur track and right-of-way which ran from their main line in Lawrenceburg north into and through the properties of the Seagram's Distilleries, Schenley's, and the Walsh Distilleries, for the purpose of servicing those industries. The principal driveway for pedestrian and vehicular traffic to and from the main entrance of the Schenley plant crossed appellant's north-south right-of-way at right angles upon the Schenley grounds. The driveway turned north immediately east of the tracks. On the northwest corner of the intersection, there was a large building known as the dryer house which abutted the driveway on the north and was located just five (5) feet west of the nearest rail of the railroad tracks. At this particular point there were two sets of tracks paralleling one another with normal spacing between them.

At the time of the accident, which occurred in the afternoon, there were two freight cars standing on the tracks nearest the building, the closer of which according to at least one witness was approximately ten (10) or fifteen (15) feet north of the intersection. The train involved consisted of a switch engine pulling three freight cars southbound on the east tracks.

There was testimony from which the jury could have concluded that the train was operated at twenty (20) to twenty-five (25) miles per hour as it approached the

intersection, that no bell was ringing, that the only signals given were two "short toots" when the engine was approximately one hundred fifty (150) to two hundred (200) feet from the intersection; that the operator of the engine was not attentive to the operation of the engine, but was looking west out of the side window and waving at some men standing near the right-of-way just north of the intersection; that the brakes of the engine were not applied before the collision, despite the fact that the engineer could have seen the nose of the truck emerging from behind the building when the engine was approximately ninety (90) feet or more from the crossing; that the engine could have been stopped or at least slowed before impact. There was testimony that the crossing was regularly and frequently used by Schenley employees and those having business with Schenley, that traffic at the time of the accident was heavy, all of which was known to appellant and its crew; that appellant had a self-imposed yard speed limit of five (5) to seven (7) miles per hour in the area in question and that any speed in excess of five (5) to seven (7) miles per hour at the intersection was not safe. There was also evidence which established that Wyatt, because of the building and standing freight cars, could not have seen the train approaching until the front end of his tractor was on or within a few feet of the tracks in question; that Wyatt apparently stopped near the east edge of the building in question and appeared to be just starting up as he emerged from behind the building; that the engine struck the left front side of the trailer causing the tractor to be thrown up upon the engine and crushing Wyatt within the cab thereof; that the train traveled fifty (50) or sixty (60) feet after the impact with the tractor-trailer impaled upon the front thereof.

There was no conclusive evidence as to whether the distilleries or the right-of-way was first established, but it was abundantly clear from the evidence that the right-of-way was owned and exclusively used by appellant for servicing Schenley and the other distilleries; that the driveway in question was paved, and in constant, daily use as a main thoroughfare for traffic in and out of the Schenley plant, that appellant and its employees knew this, and that appellant's crew considered the intersection hazardous and recognized an obligation to signal their approach thereto and limit their speed when crossing it in the interests of safety.

It is elementary, of course, that we may not weigh the evidence and that if there is some substantial evidence to support one or more of the allegations of negligence and all of the other material allegations of the complaint that the cause must be submitted to the jury by whose verdict we are bound. 2 I. L. E. Appeals, ch. 17, §§571-580, pp. 481-523. Under the circumstances, it is our opinion that the lower court properly overruled appellant's motion for a directed verdict.

The major issue in this appeal pertains to the legal position between the deceased and the railroad at the time and place of the accident and particularly the nature and scope of the duty, if any, owed by the railroad to the deceased.

Appellant takes the position that as to it, the deceased was a trespasser, or at best, no more than a bare licensee, to whom appellant owed no legal duty, save only to avoid intentional injury. This theory of the appellant is made the basis, in whole or in part, of appellant's objections to most of appellee's tendered instructions given by the lower court. In addition thereto, appellant's theory that the deceased was no more

than a bare licensee was made the basis for many of the appellant's own instructions which were refused. Appellant argues this contention extensively in its brief.

The parties apparently agree that, generally speaking, a trespasser and bare licensee take the premises upon which they come without invitation of the owner, as they find them, and the owner thereof is not liable for injury caused by passive negligence. *Cleveland, etc., R. Co.* v. *Means* (1914), 59 Ind. App. 383, 104 N. E. 785, (Petition for Rehearing denied 108 N. E. 375); *Samuel E. Pentecost Const. Co.* v. *O'Donnell* (1942), 112 Ind. App. 47, 39 N. E. 2d 812; *Millspaugh, Admr.* v. *Northern Ind. Pub. S. Co.* (1938), 104 Ind. App. 540, 12 N. E. 2d 396.

Appellee contends, however, that the deceased was not a trespasser or bare licensee as to the appellant under the circumstances of this case, but occupied the status of an *invitee or business visitor* to whom the appellant had a duty to use due care. The trial court adopted appellee's theory of the case and instructed the jury accordingly and the propriety of the lower court's action in this connection is the principal point for decision. For the purpose of actions of this type, a *trespasser or bare licensee* may be defined as a person who enters or crosses the railroad's right-of-way without license, invitation or other right for some purpose of his own or for his own convenience, pleasure or benefit. An *invitee,* on the other hand, is a person who enters or crosses such right-of-way at the railroad's invitation, express or implied, and by reason thereof occupies a more favored position in respect to the care due him by the railroad than a trespasser or bare licensee. For a thorough and exhaustive review see 167 A. L. R. 1253.

Most of the cases involving private crossings are the so-called "foot path" cases and involve injury to a member of the general public using a private foot path to cross railroad tracks at other than an established public crossing. Even in these cases the majority rule seems to be:

"... if the evidence shows that the public has for a long time, customarily and constantly, openly and notoriously, crossed railroad tracks at a place not a public highway, with the knowledge and acquiescence of the railroad company, a license or permission by the company to all persons to cross the tracks at that point may be presumed, and the railroad company is under a duty to exercise reasonable care in the movement of its trains at points where it is bound to anticipate their presence." 167 A.L.R. 1253, 1256.

Reasoning by analogy to this rule, it seems clear to us that the owners of, and business visitors to, premises serviced by a side track crossing a private driveway, regularly used for ingress or egress to said premises, with the knowledge and consent of the railroad, cannot be classified as trespassers or bare licensees in using said crossing, to whom the railroad owes no duty of due care. Our conclusion in this regard is well supported by the Indiana cases.

The leading case in Indiana, and one closely in point, is *Lake Erie, etc., R. Co.* v. *Fleming* (1915), 183 Ind. 511, 109 N. E. 753. This was an action for the alleged wrongful death of a two-year old child resulting in a verdict and judgment for the plaintiff. The defendant constructed a spur from its main line to service a cold storage and poultry packing plant in the city of Portland, Indiana. The poultry plant maintained a private driveway extending from their property line into the plant which crossed the railroad's spur. The decisive

facts as recited by the Supreme Court at page 513 of 183 Ind. and page 754 of 109 N. E. were:

> ". . . said entrance and crossing were in constant daily use by many people and were the only way to reach the plant, all of which was well known to appellant and its employees; . . . ."

The deceased was in the company of his fourteen-year old brother and had gone to the poultry house to purchase a chicken and some eggs. The fourteen-year old boy left the deceased in a wagon on a driveway near the crossing in question and went into the plant to transact his business. While there, the two-year-old child got out of the wagon and onto the crossing where he was struck and fatally injured by a box car when it was shunted or kicked by defendant's switch engine. Appellant argued, as does the appellant here, at page 514 of 183 Ind. and page 574 of 109 N. E.:

> ". . . that the facts averred show that the child was a trespasser on appellant's track at the time he was injured, or was on the track as a bare licensee, and that therefore appellant's sole legal duty toward him was to refrain from willfully injuring him."

In refuting this argument, the Indiana Supreme Court said, at page 517 of 183 Ind. and page 755 of 109 N. E.:

> "It is the law, widely recognized and declared, that although a railroad crossing is not on a public street or highway, it becomes a public crossing so as to impose upon a railroad company the same duty of exercising reasonable care and the same liability for a breach of it as at a public crossing where the company has by some act or designation invited or induced persons to so regard and use it."

In commenting upon the nature of the crossing, the deceased's use thereof and the relation of the parties,

the Supreme Court, at pages 519-520 of 183 Ind. and page 756 of 109 N. E., said:

"It was practically the only entrance to the poultry company's premises and was manifestly in aid of the common purpose of the poultry company and appellant. The youth who was in charge of appellee's infant son was using the driveway and crossing in connection with the business of the poultry company. *They were not merely loiterers there without right and therefore trespassers, but they were there pursuant to an implied invitation to all that part of the public who might have business with the poultry company. Under the facts, the implication of an invitation from appellant is as strong as that of one from the poultry company of which there could be no doubt. The suggestion in the brief for appellant that no invitation from appellant could be implied for the reason that the boys were not using the driveway and crossing on any business with appellant is not of force for if mutuality of interest is one of the essential facts from which to infer an invitation, then it sufficiently appears that appellant had such an interest in the prospering of the poultry company's business as to warrant the inference of an invitation from appellant to the poultry company's patrons to use this entrance to its premises. But this court has expressly denied the doctrine which prevails in some jurisdictions that mutual advantage must appear before an invitation can be implied. Baltimore, etc., R. Co.* v. *Slaughter, supra,* 338." (our emphasis)

In conclusion, the court in the *Fleming* case, *supra,* held that the railroad owed "a duty of exercising active vigilance to the extent of reasonable care not to injure appellee's infant son." (183 Ind. p. 520, 109 N. E. p. 756)

Both the Supreme and Appellate Courts of this state have held that railroads owe a duty of due care to

farmers and their tenants using private farm crossings. *Baltimore, etc., R. Co.* v. *Slaughter* (1906), 167 Ind. 330, 79 N. E. 186; *Terre Haute, etc., Trac. Co.* v. *Ferrell* (1928), 95 Ind. App. 456, 164 N. E. 307, and cases therein relied upon. See also *Hill* v. *Chicago, etc., R. Co.* (1919), 188 Ind. 130, 122 N. E. 321, where plaintiff, an employee of shippers who had stock pens on the railroad property, was injured by an engine negligently operated by the defendant railroad. The Supreme Court held that " . . . appellant was on the premises of appellee rightfully, . . ." (188 Ind. p. 135, 122 N. E. p. 322) and though, "He was not, as is a traveler upon a highway, within the protection of the statute requiring the company to give him highway warning signals," (188 Ind. p. 133, 122 N. E. p. 323) that nevertheless the railroad owed him a duty of "ordinary care."

Several of the decisions relied upon by the appellant are distinguishable from the *Fleming* and *Slaughter* cases, *supra*. Thus, the case of *Cannon* v. *Cleveland, etc., R. Co.* (1901), 157 Ind. 682, 62 N. E. 8, which was a pedestrian foot path case, was held, in the *Fleming* case, *supra*, not to be persuasive in support of the railroad's contention that the deceased was a trespasser. Likewise, the rule of *Lingenfelter* v. *Baltimore, etc., R. Co.* (1900), 154 Ind. 49, 55 N. E. 1021, while recognized, was held inapplicable in *Baltimore, etc., R. Co.* v. *Slaughter, supra*. The *Lingenfelter* case, *supra*, involved a pedestrian using a private path who got off of the path while walking around a standing box car and fell into a hole on the railroad's right-of-way.

One of the cases most heavily relied upon by the appellant is *Cleveland, etc., R. Co.* v. *Means, supra*. We have carefully reviewed this case and believe that it affords appellant no support. In the *Means* case, *supra*,

plaintiff's deceased, a minor child, was killed by a railroad car when struck while the child was engaged in gathering wheat which had spilled from railroad cars on the railroad right-of-way. This court pointed out at page 391 of 59 Ind. App. and page 788 of 104 N. E. that:

"Appellant seeks to relieve itself of liability on the ground that appellee's decedent, when injured, was on its premises as a trespasser, or, at most, as a licensee by sufferance, . . .".

In an extended and scholarly opinion, the court reviewed most of the cases pertaining to the duties owing trespassers, licensees and invitees and in affirming a verdict for the plaintiff, at page 395 of 59 Ind. App. and page 789 of 104 N. E., said:

". . . much of the apparent confusion in the exceptional cases in different jurisdictions has arisen from an effort to put the injured party in the particular case in one or the other of said relations to the owner of the premises and in then applying the general rule applicable to such relation, when in fact *such particular relationship was not necessarily important; but rather the true and ultimate test of actionable negligence in each case should have been, Did the owner of the premises under the particular circumstances of the case involved owe any duty to the party injured . . . .*"
(our emphasis)

In answering its own question above posed, the court said, at page 399 of 59 Ind. App. and page 790 of 104 N. E.:

". . . the duty or debt of care in such cases may arise from the fact of the presence of such child on such premises in a situation of peril, and the *knowledge* of the owner thereof, actual or constructive, of his perilous situation. In such cases such *knowledge* imposes on such owner the duty of observing the maxim old as the civil law, *sic*

*utere tuo ut alienum non laedas,* etc., from which duty such owner can not divorce himself regardless of the relation that such person in peril may sustain to him, whether as trespasser, or licensee by permission or invitation. This maxim lies at the bottom of all these exceptional cases, . . . ."

Still another case relied upon by appellant is *Asche* v. *Harmon* (1913), 54 Ind. App. 310, 101 N. E. 515, but that case is clearly distinguishable, as there the deceased used a shortcut across the defendant's right-of-way to get to his place of employment despite the existence of "no trespassing" signs.

In addition to the cases heretofore discussed, appellant also relies upon *Pittsburgh, etc., R. Co.* v. *Philpott, Admx.* (1921), 75 Ind. App. 59, 127 N. E. 827, (Petition for rehearing denied 128 N. E. 662) and *Calvert* v. *New York Central R. R. Co.* (1936), 210 Ind. 32, 199 N. E. 239.

In the *Philpott* case, *supra,* a public street dead-ended at the railroad's right-of-way. In attempting a crossing at such place the deceased sustained fatal injuries as a consequence of being struck by a train. In the court's opinion, it was pointed out that there was a question under the evidence as to whether or not the deceased " . . . was in a public place where he had a right to be, or whether he was a trespasser on private grounds." (75 Ind. App. 62, 127 N. E. 828) There was no such question concerning the decedent's right to use of the crossing in the case at bar.

The *Calvert* case, *supra,* is also distinguishable. Therein, the plaintiff's employer, without apparent authority, and for its own convenience, constructed a temporary fill over defendant's tracks so as to gain access to an area where they were doing some construction work. The plaintiff's truck became stalled on the tracks *with-*

*out knowledge of the railroad* and was struck by a car during some switching operations. Althought the railroad had some knowledge of the existence of the crossing, it had been in existence only a few days. Under the circumstances, the court concluded the plaintiff, who had lost the case below, was a mere trespasser.

The appellant next complains that the deceased, Wyatt, was guilty of contributory negligence as a matter of law. In passing upon the question of the deceased's contributory negligence it must be kept in mind that the intersection in question was "blind" for traffic proceeding east over the driveway; because the view to the north was obstructed, not only by the building which stood within five (5) feet of the tracks, but by two or more freight cars which stood on the nearest track approximately ten (10) to fifteen (15) feet north of the intersection. One witness, Wilbur McMullin, a Schenley employee, testified as follows:

"Q. And when you cross the track what, if anything, is it necessary for traffic using that to do?

"A. Well, if a person got a view of the track, he'd nearly have to stop and get out of the vehicle he was in and walk up there and look because the corner of the dry house is very close to the track and if he drove out there far enough that he could see anything, he'd nearly be on the track, possibly be on the track."

As previously pointed out, there is evidence from which the jury could have concluded that the deceased stopped before entering the right-of-way and that when he got in a position to see the approaching train, he tried to clear the tracks and did get the tractor and part of the trailer across the tracks.

As the Seventh Circuit Court of Appeals said in *Hellard* v. *Baltimore & O. R. R.*, 7 Cir., 131 F. 2d 145, 147:

"It is fair to assume that neither he nor the plaintiff was seeking self-destruction."

Appellant's contention that the deceased had the same ability to see the train as the crew had of seeing the deceased does not necessarily follow. The witness, Gallagher, testified that because of the proximity of the building to the railroad tracks that the train crew could see the front end of the truck before the driver emerged from behind the building and could see the train.

Where there is any conflict of evidence on the issue, the question of contributory negligence is always for the jury. *Miller* v. *Pennsylvania Railroad Company*, 7 Cir., 233 F. 2d 535; *Hatmaker* v. *Elgin, Joliet & Eastern Ry. Co.* (1956), 126 Ind. App. 566, 133 N. E. 2d 86; and *Callahan, Admr., etc.* v. *N. Y. Cent. R. R. Co.* (1955), 125 Ind. App. 631, 125 N. E. 2d 263.

We cannot say in this case as a matter of law, that the deceased violated §47-2114(d), Burns' Ind. Sts. Anno. (1952 Replacement), obligating motorists to stop at railroad crossings when "An approaching train is plainly visible and is in hazardous proximity to such crossing." In the first place, the jury could have concluded from the evidence that the train was not "plainly visible," and also that the deceased did stop. Apparently no one saw the deceased *before* the truck emerged from behind the building. Certainly there was no conclusive evidence that the deceased violated the statute.

We are cognizant of the fact that the Supreme Court recently granted transfer in the case of *New York Central Railroad Company* v. *Glad* (1962), 242 Ind. 450, 179 N. E. 2d 571, but that case is readily distinguishable,

factually, from the case at bar. In the *Glad* case, *supra*, the truck driver left a plant 170 feet west of the Liverpool Road and drove east on a gravel road where he stopped at its intersection with the Liverpool Road approximately 45 feet north of the railroad tracks. He then turned south and, without stopping, drove onto the tracks where he was struck by appellant's train. The only obstruction, if any, to the truck driver's view, was the manner of the construction of the body of the truck and the positioning and adjustment of the mirrors. Judge Bobbitt, speaking for the court, pointed out at 242 Ind. 455, 179 N. E. 2d 573:

> "At the point where appellee stopped his truck to make a right turn onto Liverpool Road there was an unobstructed view down appellant's tracks of approximately 760 feet to the west and this view was not obstructed . . . the entire distance of 45 feet on Liverpool Road from where the truck first stopped to the appellant's tracks."

It was further pointed out at 242 Ind. 456, 179 N. E. 2d 574, that:

> "There is undisputed evidence that appellee's truck was clearly visible to the fireman when the engine was just west of the cross-over . . . some 225 feet . . .; that appellee's truck was at the time halfway between the 'block plant' and Liverpool Road . . . ."

The evidence was undisputed that the train was traveling approximately twenty (20) miles per hour just before and at the time of the accident and that the truck was traveling ten (10) to fifteen (15) miles per hour. Appellee was familiar with the train schedule and "knew that a train might be coming from the west." (242 Ind. 456, 179 N. E. 2d 574)

Under these circumstances, Judge Bobbitt took the

position that plaintiff-appellee was guilty of contributory negligence as a matter of law.

In our opinion, the case at bar is similar to *Heiny, Admx.* v. *Pennsylvania R. Co.* (1943), 221 Ind. 367, 47 N. E. 2d 145, which Judge Bobbitt distinguished in the *Glad* case, *supra*, at page 458 of 242 Ind. and page 575 of 179 N. E. 2d, as follows:

> "There was no evidence in the Heiny case that decedent did, or did not, take the steps required by the statute before driving upon the crossing. The appellees under these circumstances sought to invoke the doctrine of *res ipsa loquitur* asserting that the collision could not have happened without a violation of the statute by the decedent and, therefore, the fact of the occurrence conclusively established contributory negligence as a matter of law."
>
> . . .
>
> "In refusing to apply the rule of *res ipsa loquitur* to the factual situation presented in the Heiny case this court, at page 373 of 221 Ind., at page 147 of 47 N.E. 2d, said:
>> " 'We hold, therefore, that the decedent's conduct, like that of the appellees, is to be measured by the standard of ordinary care. It will not be presumed that the decedent was guilty of contributory negligence merely because there was a collision between his truck and the locomotive.' "
>
> . . .
>
> ". . . whether the decedent was guilty of contributory negligence was for the determination of the jury . . . ."

In the *Glad* case, *supra*, Judge Bobbitt also distinguished the case of *Dommer* v. *Pennsylvania R. Co.*, 7 Cir., 156 F. 2d 716, by pointing out that in that case also:

> ". . . there also was no evidence as to whether the decedent did or did not stop within the distance prescribed by the statute, and this case is distinguishable from the one here at bar for the same

reason as in the Heiny case." (242 Ind. 460, 179 N.E. 2d 575)

With reference to *New York, Chi., etc., R. R. Co.* v. *Henderson* (1958), 237 Ind. 456, 146 N. E. 2d 531 (Petition for rehearing denied, 147 N. E. 2d 237), Judge Bobbitt noted that there was a "conflict on the question as to whether the statute had been violated," and consequently held that "this case furnishes no authority under the undisputed facts in the present case." (242 Ind. 460, 179 N. E. 2d 575-6)

Thus it is clear that where there is a dispute concerning whether or not the train is clearly visible, or whether or not the motorist stopped, *or where there is no evidence on the subject,* that the court cannot presume that there has been a violation of the statute and hold the motorist contributorially negligent as a matter of law, but the issues must be submitted to the jury. In this connection it should be kept in mind that in determining whether or not the train was "plainly visible" within the meaning of the statute, the jury must determine whether it was plainly visible to a person exercising reasonable care under all the existing circumstances. *Pearson* v. *Baltimore & Ohio R. Co.,* 7 Cir., 200 F. 2d 569.

The exercise of due care did not impose upon the decedent the duty to look for approaching trains when he was in any precise place or any precise distance from the track as long as he did look when and where such observations were reasonably calculated to be effective; nor was he required to look to one side first in preference to the other. *Baltimore & Ohio R. Co.* v. *Reyher, Admx.* (1939), 216 Ind. 545, 24 N. E. 2d 284; *Pennsylvania R. R. Co.* v. *Boyd* (1933), 98 Ind. App. 439, 185 N. E. 160; and *Kelly* v. *N. Y. C. & St. L. R. R. Co.* (1939), 102 Ind. App. 175, 199 N. E. 453.

We do not construe the opinion of the Supreme Court in the *Glad* case, *supra,* as intending to alter the firmly established rule Indiana that in deciding the question of contributory negligence the jury may consider the railroad's prior negligence, if any. In *Pearson* v. *Baltimore & Ohio R. Co., supra,* at pages 573-4, the court reviewed the Indiana rule on this subject as follows:

"That the plaintiff may justifiably have relaxed her vigilance is illustrated by the language of the Supreme Court of Indiana in Bartley v. Chicago & E. I. R. Co., 216 Ind. 512, at page 524, 24 N.E. 2d 405, at page 410:

" 'The evidence in this case tends to show that the appellee Railway Company was guilty of negligence *per se* in failing to give warning signals of the approach of the train, in operating the train at a speed in violation of the city ordinance and in failing to properly maintain the crossing and the surface of the street between its tracks. This, of course, does not excuse the appellant from the duty of using due care for his own safety, *but these facts may have an important bearing on the question of whether appellant was using such due care.'* (Our emphasis)

"Many Indiana cases have announced and approved this principle, that the defendant's prior negligence may be a factor in determining whether the plaintiff has used due care. See also Pennsylvania Co. v. Stegemeier, 118 Ind. 305, 309-312, 20 N.E. 843; Elgin, Joliet & Eastern R. Co. v. Scherer, 121 Ind. App. 477, 483, 98 N.E. 2d 369."

. . .

" '. . . When the facts and circumstances are such as to have a tendency to mislead one about to pass such a crossing, the law will not hold him to that strict accountability that it would under ordinary conditions. In all such cases the question of contributory negligence is for the jury.' "

In *Bartley* v. *Chicago & E. I. R. Co.* (1939), 216 Ind. 512, 24 N. E. 2d 405, the court at page 522 of 216 Ind. and page 409 of 24 N. E. 2d, said:

"The failure of the Railway Company to give such signals not only is negligence *per se* on the part of the Railway Company, but is a fact which the jury may properly consider, together with other pertinent facts, in determining the question of whether appellant was guilty of contributory negligence as he approached said crossing and prior to the time he saw or could have seen the approaching train."

It has also been suggested that where there are obstructions at the intersection in question, the plaintiff's contributory negligence is almost always one of fact for the jury, *N. Y. Central Ry. Co.* v. *Milhiser* (1952), 231 Ind. 180, 106 N. E. 2d 453, and that any distractions to the motorist's attention may be properly considered by the jury in determining the question of contributory negligence. *Baltimore & Ohio R. Co.* v. *Daugherty* (1953), 123 Ind. App. 373, 111 N. E. 2d 483; *Bartley* v. *Chicago & E. I. R. Co., supra.* See also *Lake Erie, etc., R. Co.* v. *McFarren* (1919), 188 Ind. 113, 122 N. E. 330; cited with approval by the 7th Circuit in *McNaughton* v. *New York Central Railroad Company,* 7 Cir., 220 F. 2d 835, where the Indiana Supreme Court said, at page 118 of 188 Ind. and page 332 of 122 N. E.:

" 'The case before us belongs to the class in which railroad companies are held responsible because they put the traveler off his guard and lure him into danger.' "

We recognize, of course, that a traveler upon either a public highway or private roadway approaching a railroad crossing is required to use every reasonable precaution to keep a lookout and listen attentively for an approaching train and he is

not relieved of this duty simply because the train fails to signal, (*New York Central Railroad Company* v. *Glad, supra*) but he need not *anticipate* negligence on the part of the railroad to avoid a charge of contributory negligence. *Kelly* v. *N. Y. C. & St. L. R. R. Co.* (1936), 102 Ind. App. 175, 199 N. E. 453. In fact, a motorist has a right to assume, that if a train is approaching, the railroad will exercise due care, and to act upon such assumption. (*Bartley* v. *Chicago & E. I. R. Co., supra*)

In the case of *Baltimore & Ohio R. Co.* v. *Reyher, Admx., supra,* the railroad argued at page 549 of 216 Ind. and page 285 of 24 N. E. 2d:

> ". . . That if a person, by the exercise of ordinary care, could have known of the approach of a train, by looking or listening, in time to have avoided the injury, it will be presumed, . . . that he did not look or listen, or, that if he did, he did not heed what he saw or heard."

In rejecting this argument, the Supreme Court of Indiana said: (page 550 of 216 Ind. and page 285 of 24 N. E. 2d)

> " ' "The law of this state does not permit the indulgence in the presumption that a person will exercise his faculties for his own protection and safety, nor may it be presumed that he was or was not guilty of contributory negligence, nor that he failed to exercise ordinary care." '
>
> "Consequently, when courts have undertaken to instruct juries that this or that may be presumed, without evidence of the fact, they have invariably committed error."

In a recent opinion of this court in *Baltimore & Ohio Railroad Company* v. *Patrick* (1960), 131 Ind. App. 105, 166 N. E. 2d 654, Judge Myers said at page 117 of 131 Ind. App. and page 661 of 166 N. E. 2d:

*"There was much conflict in the evidence as to whether there was sufficient warning given by those operating the train prior to the collision. The question of negligence, proximate cause, and contributory negligence therefore were questions of fact for the jury after proper instructions."* (Our emphasis)

Appellee took the pre-trial examinations of three of appellant's train crew which were offered and read into evidence by appellee. Appellant contends that parts of these statements are against appellee's interests and that appellee is bound thereby. It is true, as a general proposition, that a party is bound by the testimony given by himself or his witnesses which is favorable to his adversary unless such testimony is withdrawn, explained or modified. *Gramar Investment Co.* v. *Cumberworth* (1950), 120 Ind. App. 379, 92 N. E. 2d 736.

However, under our statute, Burns' §2-1728, 1961 Supplement, employees of a corporate party may be examined conditionally before trial and the evidence thus taken may be rebutted or contradicted by the party producing such witness. Burns' §2-1731 and §2-1726. We think it clear that under these statutory provisions and the decisions in Indiana, the pre-trial examinations of employees of a corporate adversary, taken and introduced by a party, do not bind the party introducing them any more than such party is bound by the conditional examination of an individual adversary taken and introduced into evidence. 10 I. L. E., Depositions and Discovery, §32, pp. 294, 295; *Crocker* v. *Agenbroad* (1890), 122 Ind. 585, 24 N. E. 169, and *McDonald* v. *Swanson* (1936), 103 Ind. App. 171, 1 N. E. 2d 684.

Appellant next complains that the trial court imposed upon the appellant's crew the same duties which apply

to operation and management of trains at public crossings. Appellant's objections in this connection are not well taken. A review of the record demonstrates clearly that the trial court did not treat the crossing in question as a public crossing. In fact, the jury was properly instructed that there was no duty to give the regular statutory signals required at highway crossings, but only such timely and reasonable signals under the circumstances as would be required in the exercise of due care. In fact, the case was tried upon the theory that the railroad's duty in regard to speed, lookout and control was simply to use due care in these particulars.

In the case of *McGunegill* v. *Chesapeake & O. Ry. Co.* 7 Cir., 199 F. 2d 302, 303, plaintiff was injured at a crossing used by the public to get to a swimming pool in the city of Muncie, Indiana, although the crossing had never been opened or dedicated to the public. The Federal Court, however, held, relying upon *Lake Erie, etc., R. Co.* v. *Fleming, supra,* that the crossing was "at least as public in character" as that involved in the Fleming case and was, as a matter of fact, such as to require the defendant to exercise *due care* towards travelers using it.

The duty to use *due care* includes a duty to operate at a reasonable speed under the circumstances even at private crossings. *Hill* v. *Chicago, etc., R. Co., supra.*

Although it is generally true that speed alone is never negligence in the absence of a statute or ordinance limiting the speed, it is also clear that "in the matter of speed, as in other things, railroad companies must regulate their trains with proper regard for human life." *Pittsburgh, etc., R. Co.* v. *Nichols, Admr.* (1921), 78 Ind. App. 361, 130 N. E. 546, 555; see also *The Chicago,*

*St. Louis & Pittsburgh Railroad Company* v. *Spilker* (1892), 134 Ind. 380, 33 N. E. 280, to the effect that in the matter of speed the railroad's duty is to use due care.

In *Hartlage* v. *Louisville, etc., Lighting Co.* (1913), 180 Ind. 666, 103 N. E. 737, 738, a private crossing was involved but the Supreme Court of Indiana held that if the railroad had "actual knowledge of the existence of such crossing and of its use, . . . it was charged with the general duty of keeping a lookout for persons passing over the same." A duty to maintain control in operation of a train even during switching operations is recognized by the Indiana Supreme Court in *New York, etc., R. Co.* v. *Shields* (1916), 185 Ind. 704, 112 N. E. 762, and duty to keep a lookout and maintain control is commensurate with the dangerous character of the crossing. *Pittsburgh, etc., R. Co.* v. *Bunting* (1925), 84 Ind. App. 45, 149 N. E. 916; *Miller* v. *Pennsylvania Railroad Company*, 7 Cir., 233 F. 2d 535.

The appellant also argues that the trial court erred in instructing the jury in substance that it could consider the *hazardous* character of the crossing in determining whether or not appellant used due care. The jury was not instructed as a matter of law that the intersection in question was hazardous so as to impose any duty of watchmen or signals. They were simply informed in effect that the duty of the railroad to use due care was commensurate with the danger involved and that the jury could consider all of the circumstances in the case including the obstruction to view, if any, in determining the dangerous character of the intersection. The instructions in this connection were consistent with the Indiana law. *New York, etc., R. Co.* v. *Shields, supra; Pittsburgh, etc., R. Co.* v. *Bunting, supra.*

These rules were just recently recognized in another opinion by Judge Bobbitt of the Indiana Supreme Court in *Tyler* v. *Chicago & Eastern Illinois Railway* (1961), 241 Ind. 463, 173 N. E. 2d 314. There it was said at page 475 of 241 Ind. and page 319 of 173 N. E. 2d:

> " ' "Whenever a railroad crossing is for any reason particularly dangerous, it *is not* a question for the jury to decide whether or not a railroad company should provide signalling and safety devices at any particular crossing, but the jury may consider the fact that there were no devices or watchmen together with all the other circumstances surrounding the crossing such as the near situation of houses, trees, vegetation, and the like, and the frequency with which travelers pass over the crossing in order to determine whether or not *the operation of the car* in the manner and at the speed that it was operated, was negligent. *T. H. I. & E. Traction Co.* v. *Phillips* (1921), 191 Ind. 374, 132 N.E. 740." (Emphasis supplied.)' "

Appellant also complains of appellee's tendered instruction numbered 16 to the effect that it was unlawful to permit trains to be operated by any person other than a regularly employed engineer.

There was no prejudicial error in this instruction particularly in view of plaintiff-appellee's instruction numbered 38, which was given by the court, and which informed the jury that the mere fact that the operator of the train was not regularly employed and licensed did not mean that defendant was guilty of negligence. The jury was also told that it was for them to decide upon a consideration of all the evidence "whether or not Schneider, because of his age or experience, was or was not qualified or competent to operate the train."

Appellant further objects to the giving of plaintiff's instruction numbered 17 to the effect that the jury could

consider company safety rules and regulations and their violation, if any, in determining whether or not the defendant "exercised due care." Appellant's objection to this instruction is based primarily upon cases from other jurisdictions, including the case of *Fonda* v. *St. Paul City Ry. Co.* (1898), 71 Minn. 438, 74 N. W. 166.

Safety rules and regulations of a party, when they bear upon issuable facts, may be used in evidence either for or against the party. *New York Cent. R. Co.* v. *Verpleatse* (1945), 116 Ind. App. 1, 59 N. E. 2d 916, and *Baltimore, etc., R. Co.* v. *Roberts* (1903), 161 Ind. 1, 67 N. E. 530. The jury was not instructed that a violation of the regulation constituted negligence per se or even prima facie negligence, but simply that they could consider any such violation in passing upon the question of appellant's negligence. The Minnesota case relied upon by appellant has been specifically considered and disapproved by the Indiana Appellate Court in the case of *Standard Oil Co.* v. *Allen, Admr.*, 121 N. E. 329 (reversed on other grounds (1920), 189 Ind. 398, 126 N. E. 674).

Also argued by appellant was the lower court's admission of certain testimony of appellee's witness, Dale Schoeff, who stated his opinion that if the engineer had sounded two longs, a short and two longs, as it approached the intersection, he would have heard it. Under the circumstances there was no prejudicial error involved in admitting this evidence. The witness had been permitted to testify *without objection* that he heard no bell ringing or horn sounding and that he was in a position to hear same had they been given and that he had good hearing. Upon cross-examination, the witness was questioned about a prior written statement he allegedly made, which was not offered into evidence by appellant, in which he ad-

mitted that he may have said that the engineer could have sounded a whistle or bell and he not remember it. Since, without objection, the subject was first explored on direct, and more particularly on cross-examination, there was no error involved in permitting further clarification of the point on redirect.

Also there was no error involved in permitting introduction of the statement in its entirety upon re-direct examination. *Terre Haute Electric R. Co.* v. *Lauer* (1899), 21 Ind. App. 466, 52 N. E. 703; *Brown* v. *State* (1916), 184 Ind. 254, 108 N. E. 861; *Breedlove* v. *Breedlove* (1901), 27 Ind. App. 560, 61 N. E. 797; 30 I. L. E. Witnesses, §141, p. 132, and §244, p. 200.

Finally appellant complains of admission into evidence of a series of family photographs of the deceased and his surviving beneficiaries on the grounds that they were prejudicial and the lower court abused its discretion.

Again appellant relies for authority upon cases from foreign jurisdictions. The rule in Indiana is that the admission of photographs in evidence is within the sound discretion of the trial court and will not be disturbed unless there is a manifest abuse of this discretion. *Drohan* v. *Standard Oil Co.*, 7 Cir., 168 F. 2d 761; *Dill* v. *Dill* (1949), 120 Ind. App. 61, 88 N. E. 2d 396; *Highshew* v. *Kushto* (1956), 126 Ind. App. 584, 131 N. E. 2d 652, 656.

The photographs which showed the deceased at family gatherings supported the testimony of Mrs. Waytt to the effect that the deceased was an active and able-bodied man, devoted to his family and participated in the support, maintenance, and rearing of his children. Evidence as to damages in death

actions is permitted to take a wide range, and evidence showing contributions by the deceased to his beneficiaries is admissible together with the character and habits of the deceased. Loss of parental training, guidance, love and affection was an element of the damages suffered by the deceased's surviving statutory beneficiaries. 10 I. L. E. Death, §24, p. 35, and *Am. Carloading Corp.* v. *Gary Tr. & Sav. Bk., Admr.* (1940), 216 Ind. 649, 25 N. E. 2d 777. Appellant has raised no issue concerning excessiveness of the verdict and indeed it does not appear to be excessive under the circumstances, so that even if there was error involved in the admission of the exhibits, it must be considered harmless.

This opinion has been inordinately long, but the appellant's motion for new trial and brief raised an inordinate number of issues, all of which we have carefully considered. It is our opinion that the case below was fairly tried and we find no reversible error.

The judgment below is therefore affirmed.

Cooper, P. J., and Ax and Myers, JJ., concur.

NOTE.—Reported in 184 N. E. 2d 657. Transfer denied 193 N. E. 2d 63.